[No. 16053.   Department One.   April 12, 1921.]

# D. W. DIETERICH *et al., Appellants,* v. D. E. RICE, *Respondent.*[1]

VENDOR AND PURCHASER (60, 72)—RESCISSION BY PURCHASER—
FRAUD—PLEADING—SUFFICIENCY OF COMPLAINT. In an action to rescind
a contract for the purchase of farm land, the complaint was sufficient,
as against general demurrer, where it alleged that defendant induced
the purchase by fraudulently representing that the land was free
from destructive frosts, and was tillable fertile soil of extra good
crop-producing quality, producing certain high average crops of grain,
hay and fruit per acre, and that plaintiffs were strangers in the
vicinity of the land, which they had visited but once prior to the
contract, and that defendant took plaintiffs upon a small portion of
the land, when he pointed out and showed plaintiffs land and prop-
erty other than that described in the contract as constituting part
of the land included in the intended sale.

SAME (58, 59)—RESCISSION BY PURCHASER—RIGHT TO RESCIND—
DEFENSES—PROVISION AS TO ORAL REPRESENTATIONS. A clause in a writ-
ten contract for the sale of land providing that the vendee is pur-
chasing the same upon careful inspection and that there has been
no other inducement other than those recited and that no changes
or verbal agreements now or hereafter will be binding on either party
unless reduced to writing and signed, would not estop plaintiffs from
setting up false and fraudulent representations inducing their enter-
ing into the contract, where the action for rescission is based upon
actual fraud in procuring the execution of the instrument.

EVIDENCE (167)—PAROL TO CONTRADICT WRITING—FRAUD—EFFECT
OF CONTRACT TO EXCLUDE ORAL EVIDENCE. Parol evidence of false and
fraudulent representations inducing one to enter into a written con-
tract is admissible notwithstanding an express recital that all oral
representations shall be inoperative.

Appeal from a judgment of the superior court for
Pend Oreille county, Carey, J., entered May 26, 1920,
dismissing an action for rescission, upon sustaining a
demurrer to the complaint. Reversed.

*Mulligan & Bardsley,* for appellants.

*Davis & Heil,* for respondent.

[1]Reported in 197 Pac. 1.

FULLERTON, J.—On March 21, 1919, the appellants Dieterich entered into a written contract with the respondent, Rice, by the terms of which they agreed to purchase, for a stated consideration, certain specifically described lands situated in Pend Oreille county. The contract contained the following clause:

"This land is sold to second party subject to any and all county roads and with the understanding that he has personally and carefully inspected said premises, and is purchasing the same by said inspection and not from any other sayings or inducements by first party or his agents, and there has been no other inducements other than recited herein and that no changes or verbal agreements now or hereafter will be binding on either party, unless reduced to writing and signed by both first and second parties."

In October, 1919, the appellants began the present action to rescind and annul the contract and to recover the sum paid on the purchase price. The action is based on fraud and deceit. It is alleged that the respondent stated and represented to the appellant D. W. Dieterich, as an inducement to the purchase of the land, that the land was in a vicinity free from destructive frosts, was tillable agricultural land, that the soil thereof was fertile and of extra good crop-producing quality; that each year, for several years next prior to the execution of the contract, the threshing bill for threshing grain grown on the land was between three hundred and four hundred dollars each year; that the average production of wheat per acre for three successive years next prior to the execution of the contract had been between twenty-five and thirty bushels per acre, and that the average production of oats per acre for a like period had been between sixty and seventy-five bushels; that in one certain year the land

produced at the rate of forty-six bushels of wheat and
one hundred and three bushels of oats per acre; that
the hay theretofore grown on the land had averaged
between one and one-half and two and one-half tons
per acre in each year; that the orchard thereon pro-
duced fruit in every year sufficient for the use of any
family; that the land abutted upon a public highway,
connecting directly with the city of Spokane, from
which place buyers of produce came to the farm each
year for the purchase of produce grown on the farm,
and that the defendant had sold to such purchasers as
much as seven hundred dollars worth of produce in
one day. Specifically, it is alleged:

"That plaintiff prior to the execution of said con-
tract went with the defendant to view said land and
property, and said defendant purported to take this
plaintiff upon a small portion thereof, at which time
the defendant pointed out and showed this plaintiff
land and property other than the land described in the
contract, and stated that it was a part of the land this
plaintiff was intending to purchase."

The appellants, by appropriate allegations in their
complaint, negatived the truth of the representations
concerning the character of the land, its soil, and the
quantity of the crops that had theretofore been grown
thereon, averring that the land had little or no value
for agricultural purposes. They alleged that the land
did not abut upon the highway mentioned, and that the
representations as to sales of produce grown on the
land to purchasers reaching the land by the highway
were false and untrue. They alleged that they had
visited the land but once prior to entering into the con-
tract of purchase, that they were strangers in the vicin-
ity of the land and strangers in the state of Washing-
ton, and had no independent knowledge of the soils in

the vicinity of the land or of the climatic conditions surrounding it. They alleged that representations made concerning the property were made for the purpose of inducing them to enter into the contract of purchase, that they were known to be false by the respondent at the time they were made, and that the appellants, relying thereon and believing the same to be true, were induced thereby to enter into the contract.

To the complaint a general demurrer was interposed, which the trial court sustained. The appellants elected to stand on the complaint, whereupon a judgment dismissing the action was entered. This appeal is from the judgment so entered.

The ultimate question before us, therefore, is, does the complaint state facts sufficient to constitute a cause of action. That the allegations concerning the representations, laying aside any other consideration, are sufficient to put the respondent on his defense, our prior holdings in kindred cases do not leave in doubt. The cases will be found collected in part in the case of *McMillen v. Hillman,* 66 Wash. 27, 118 Pac. 903, and no further reference need be made to them. But it is said that the appellants are estopped to urge these representations as fraudulent by the clause of the contract which we have heretofore set forth at length. This contention is so effectually answered by the court of appeals of New York, in the case of *Bridger v. Goldsmith,* 143 N. Y. 424, 38 N. E. 458, that we feel justified in quoting from it somewhat at length. In that case the defendant sold to the plaintiff his business, fixtures and property, making grossly false and fraudulent statements as to the character and value of the property and the extent and magnitude of the business to induce the purchase. The contract of sale was reduced

to writing and executed under seal. It contained the following clause:

"It is expressly understood and agreed between the parties hereto that the said party of the first part has not, in any manner or form stated, made or represented to the said party of the second part, for the purpose of inducing the sale of the said business or the making of this agreement, any statements or representations, verbally or in writing in respect to said business other than that the said party of the first part has been engaged in the piano business in the city of New York since 1867."

Discussing the question whether this clause estopped the plaintiff from asserting the fraudulent representations to avoid the sale, the court said:

"It is urged by the learned counsel for the defendant that, as this stipulation was inserted in the writing, which is under seal and assented to by both parties, the action cannot be maintained. I assume that the fact that a seal was unnecessarily affixed to an agreement for the sale of personal property cannot affect the rights of the parties. Every defense is open to either party that would have existed in case the writing was unsealed. It appears that after the negotiations had been completed and the agreement drawn, the defendant stated, in the presence of the plaintiff, and the counsel for both parties present, that he wanted a clause of this character inserted. The plaintiff's counsel at first objected to it. The defendant's counsel suggested that it would make no difference, and the plaintiff consented that it might be put in. There is evidence in the case tending to show that the plaintiff voluntarily assented to this stipulation after having been advised by his counsel that it would have the effect of precluding him from subsequently alleging fraud in the transaction, even though it existed in fact. This provision is not a covenant in any proper sense of that term. Indeed, it can scarcely be considered as any part of the agreement at all. It does not relate in any

manner to the subject-matter of the contract. It was a mere statement in the nature of a certificate as to a fact. It did not relate to the property or to the terms of the sale or the payments, but to the absence of all fraud from the transaction. The clause cannot be given any greater effect than if it had been written upon a separate paper after the execution of the contract and signed by the parties. The question now is whether it can be given the effect claimed for it by the learned counsel for the defendant, to preclude the plaintiff from alleging fraud in the sale and pursuing in the courts the remedies which the law gives in such cases. It cannot operate by way of estoppel for the obvious reason that the statements were false to the defendant's knowledge. He may, indeed, have relied upon its force and efficacy to protect him from the consequences of his own fraud, but he certainly could not have relied upon the truth of any statement in it. A mere device of the guilty party to a contract intended to shield himself from the results of his own fraud, practiced upon the other party cannot well be elevated to the dignity and importance of an equitable estoppel. If the clause has any effect whatever, it must be as a promise or agreement on the part of the plaintiff, that however grossly he may have been deceived and defrauded by the defendant, he would never allege it against the transaction or complain of it, but would forever after hold his peace. It is difficult to conceive that such a clause could ever be suggested by a party to a contract, unless there was in his own mind at least a lingering doubt as to the honesty and integrity of his conduct. I assume that there is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may, nevertheless, contract with him in the very instrument by means of which it was perpetrated, for immunity against its consequences, close his mouth from complaining of it and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the

rule but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing.

"This clause cannot be separated from the transaction in which it originated. It is tainted with the same vice and must share the same condemnation. As the chain can be no stronger than its weakest link, so this clause cannot be made to survive the rest of the transaction as a shield and protection to the defendant.

"Much of the argument in support of the appeal rests upon the proposition that the defendant would not have assented to the sale without this clause, and as the plaintiff obtained such assent only by acquiescing in its insertion in the writing, he ought not now to be permitted to question it. Without inquiring what the result would or ought to be in case this assumption was correct, it is sufficient to observe that no such fact is found, and in the sense in which the defendant claims, it could not have been found from the testimony. While at the end of the transaction he did suggest that the clause should be inserted, and perhaps insisted upon it, yet to say that he would not have made the sale under the same circumstances without it, had the plaintiff refused his assent, is to assert a proposition that finds no support in the facts and circumstances of the case. No doubt the defendant wanted this provision in the contract, but the terms and conditions of the sale had been settled before it was suggested, and it was manifestly intended as a possible safeguard against the result of misrepresentation rather than a *bona fide* condition of the sale."

The rule as thus stated has the general support of the authorities. In *J. A. Fay etc. Co. v. Independent Lumber Co.*, 178 Ala. 166, 59 South. 470, the court, passing on the sufficiency of a complaint in a suit to cancel and rescind a contract of sale, used this language:

"If the complainant was fraudulently induced to enter into the contract and to execute the same, it would not, of course, be bound by any particular clause of same concluding it against setting up false and fraudulent representations within a proper and reasonable time. If the instrument was void for fraud in its execution, as alleged in the complainant's bill, it was of no more binding efficacy upon the complainant than if it had no existence, or were a piece of waste paper."

In 14 Am. & Eng. Ency. Law (2d ed.), 200, the rule is stated as follows:

"Parol evidence of false and fraudulent representations inducing one to enter into a written contract is admissible notwithstanding the contract contains an express recital that there have been no representations, or that all oral representations shall be inoperative."

See, also, *United States Gypsum Co. v. Shields,* 101 Tex. 473, 106 S. W. 724; 13 C. J. 394.

Such also was our own holding in the case of *Gordon v. Hillman,* 91 Wash. 490, 158 Pac. 96. The contract there contained a clause to the effect that the contract purchaser had examined the property, and had satisfied himself from such personal examination as to the quality of the property to be conveyed and delivered. This was held not to preclude the purchaser from showing that he had not in fact examined the property, but had relied upon the representations of the vendor concerning its quality and that the representations were grossly false.

Of the cases cited as maintaining a contrary conclusion, the only one having any direct bearing is the case of *Kreshover v. Berger,* 135 App. Div. 27, 119 N. Y. Supp. 737. This case we think is distinguishable in its facts. But if we are mistaken in this we must decline

to follow it, since such a course would involve the overruling of our prior decision.

Our conclusion is that the complaint states actionable fraud, that the appellants are not estopped to show the fraudulent nature of the contract by reason of the recitals therein, and that the trial court erred in so holding. The judgment is reversed, and the cause remanded with instruction to reinstate the case and put the respondent upon his defense.

PARKER, C. J., BRIDGES, and MACKINTOSH, JJ., concur.