[No. 16571.   Department Two.   November 29, 1921.]

L. B. WISNER, *Respondent*, v. R. W. CARTER *et al.*,
*Defendants*, CHARLES E. HOARD *et al.*,
*Appellants.*[1]

VENDOR AND PURCHASER (60)—RESCISSION BY PURCHASER—FRAUD
—EVIDENCE—SUFFICIENCY.  Rescission of an exchange of properties is
properly decreed where the evidence shows that by collusion be-
tween one of the parties and the broker representing both parties
the value of one of the properties which was situated in another
county was grossly misrepresented by its owner and the broker.

SAME (74)—FRAUD—ACTION FOR RESCISSION—JUDGMENT—EXTENT
OF RELIEF.  In rescinding an exchange of properties on the ground
of misrepresentation by one of the grantors and a broker acting
jointly for both grantors, the refusal of the court to allow credit to
the defendants for sums retained by the broker as commission and
expense money was proper.

Appeal from a judgment of the superior court for
King county, Allen, J., entered November 5, 1920, in
favor of the plaintiff, in an action for rescission, tried
to the court.  Affirmed.

*C. H. Steffen* and *Andrew J. Balliet,* for appellants.

*W. M. Whitney,* for respondent.

HOVEY, J.—In this case the respondent, Lillie B.
Wisner, sues to set aside transfers of property made
between herself and the appellants, Charles E. Hoard
and wife.

Respondent owned two lots, upon which were houses,
located in an addition to Seattle, and which were in-
cumbered with a mortgage of $1,800 and some me-
chanics' liens.  The testimony varies as to their value,
but both properties were disposed of shortly after the
deal for a total of $4,750 on long time contracts.  The
appellants owned a tract of land in Pierce county

[1]Reported in 201 Pac. 918.

which was within the limits of the Camp Lewis cantonment site and which they had contracted to sell to one Hudson for $2,500, there being credited upon the contract the sum of $1,000 as initial payment, with a balance due of $1,500. R. W. Carter was a real estate agent in the city of Seattle and the principal figure in the present controversy. He and his wife were made defendants in the cause, but no relief was granted as against them. The respondent was awarded a decree under which the appellants were required to turn over to her the contracts then held by them on the Seattle property upon the payment by respondent of the sum of $1,668.30, which represented the amount of the mortgage which appellants had paid, together with the other disbursements made by them on the properties.

Carter appears to have been the agent of both parties. The Pierce county property had been listed with him about July 10, and his relations with the appellant husband appear to have been quite intimate prior to the present deal. Carter was also acquainted with the respondent and rented rooms in an apartment house operated by her. Each of the parties was anxious to dispose of their properties and Carter undertook to arrange a deal. Respondent contends that she was to receive $4,000 in cash for her properties, from which was to be deducted the mortgage of $1,800, leaving a balance of about $2,200; that Carter represented to her that the Pierce county property, which was about to be condemned, had been appraised at $2,100 or $2,200, which would insure the payment to her of the sum of $1,500 still due upon the contract for that property, and that the necessary papers to protect her on the amount coming from that property would be executed and that she

would receive the money from that source about September 1. The appellants contend that respondent was merely to take an assignment of the Pierce county contract along with a quitclaim deed, and that whatever amount she received from that source would be dependent upon what would be allowed in the condemnation suit.

The parties met on August 14 in the real estate office of Joseph E. Thomas & Company, in Seattle. The respondent executed the deed to her property and the appellant Hoard drew a check for $800. There were a number of liens against the Seattle property aside from the mortgage, which it was the duty of respondent to pay, and it was understood that these should be paid from the cash then furnished. The respondent contends that this deed was executed and delivered to Carter to be held by him in trust to protect Hoard in the payment of the cash that he was then advancing and to protect her in receiving the full amount due her. It is undisputed that at this time no papers were prepared for the transfer of the interest of appellants in the Pierce county property or the contract for the sale of the same to Hudson, and these latter papers were not executed until several days later. The deed for the Seattle property in favor of Hoard was placed of record the same date. The check first drawn by Hoard was in favor of the respondent, but it was never received or indorsed by her but was taken possession of by Carter, and the following day he went to appellants' residence, where appellant husband joined him, and they went to the bank and drew out $800 in cash, which money was turned over to Carter and the check in favor of the respondent was destroyed. The liens upon the property were paid off and Carter delivered to the respondent $229.41 on August 19. Carter claims to have given respondent a

statement at that time showing an allowance to himself of $100 commission and a balance due him in the way of overpayment of $32.31. The statement shows one item under date of August 22.

A few days after the transaction in the real estate office, the respondent discovered that the deed had been placed of record. Soon afterwards Carter presented to respondent the abstract, quitclaim deed, and assignment of contract for the Pierce county property, and, after leaving these papers in her possession for a few hours, retook the deed and assignment. The evidence does not show what became of the abstract. Respondent contends that she did not examine these papers, and it is undisputed that she never submitted them to an attorney.

It appears from the evidence that, at the time the deal was made between appellants and Hudson in July, there was a conference in the office of William Laube, an attorney in Seattle, at which time Mr. Laube, the purchaser, Hudson, and his brother all testified Carter expressly stated in the presence of the Hoards that this Pierce county property had in fact been appraised at $2,100 or $2,200 and it was just simply a matter of getting the money from the court. This part of the conversation is denied by the appellants and by Carter. It further appears in the evidence that, at an interview held in the office of Day Karr, another attorney in Seattle, some time after the deal between the parties hereto, Carter again made the same statements relative to the appraisal. It subsequently appeared that the property had not in fact been appraised at the time either deal was made, and that it was subsequently appraised at something over $500.

We have recited only so much of the testimony as we deem determinative of the case. In our opinion,

the respondent sustained her burden of proof, and it fairly appears from the testimony that there was collusion between the real estate agent, Carter, and the appellant husband to overreach the respondent, and that she was defrauded substantially as alleged, and that the judgment of the lower court was fully justified.

Appellants complain because the court, in computing the amount to be paid by respondent, refused to allow them credit for the sum of $100 Carter had retained as commission and a few dollars additional for some expense money, and a motion was made that the judgment be corrected in that respect. In our opinion, the respondent had a right to be made whole on the transaction and the court did not err in this respect.

Judgment affirmed.

PARKER, C. J., HOLCOMB, MAIN, and MACKINTOSH, JJ., concur.