[No. 19889. Department One. October 21, 1926.]

## A. H. BARNETT et al., Respondents, v. J. A. COBB et al., Appellants.[1]

[1] EXCHANGE OF PROPERTY (3)—RESCISSION—NATURE AND EXTENT OF RELIEF. Upon awarding rescission of an exchange of properties, one of which had been mortgaged since the trade, it is immaterial whether the court order the mortgage paid or let it stand as a credit to offset a debt due on the other property.

[2] EVIDENCE (167)—VENDOR AND PURCHASER (58, 59)—PAROL EVIDENCE INVALIDATING WRITTEN AGREEMENT—FRAUD—RESCISSION BY PURCHASER—PROVISION AS TO ORAL REPRESENTATIONS. A provision in a contract for the exchange of properties to the effect that both parties are satisfied with the properties as represented and waive all claims arising by reason of representations, does not estop one from rescinding for oral misrepresentations inducing the trade, where the grounds for rescission were not revealed to the party relying thereon, and the other party knew the facts and of the ignorance of the other as to material matters misrepresented.

[3] EXCHANGE OF PROPERTY (3)—RESCISSION FOR FRAUD—RELIEF—MONEY JUDGMENT. One who, by fraud and overreaching, induced an exchange of property for a grocery store, which, upon rescission of the contract, could not be returned because of change in the stock, cannot complain of an award for the value of the grocery stock, fixed by evidence with as much precision as could be expected under the circumstances.

[1]Reported in 250 Pac. 57.

[4] Vendor and Purchaser (74)—Action for Rescission—Extent of Relief. Upon rescission of a trade of a grocery store for real property, a commission paid for the sale of a grocery store is a legitimate expense connected with the trade, for which the plaintiff was entitled to be made whole.

[5] Interest (20)—Time from Which Interest Runs. Where, through a wrongful exchange of property for a grocery store, the store became converted on the date of the trade and could not be returned to the owner, he is entitled to recover the value with interest from the date of the trade.

[6] Costs (3)—Discretion of Court. Upon the rescission of a trade for fraud, costs are in the discretion of the court.

Cross-appeals from a judgment of the superior court for Walla Walla county, Mills, J., entered January 29, 1925, favorable in part to both plaintiff and defendant, in an action for rescission, tried to the court. Modified on plaintiffs' cross-appeal.

*John C. Hurspool,* for plaintiffs-appellants.

*Sharpstein, Smith & Sharpstein,* for defendants-appellants.

Askren, J.—In July, 1925, A. H. Barnett and wife traded the stock, fixtures and business of the Barnett Cash Grocery Company of Walla Walla, together with their home in that city, to J. A. Cobb and wife, of Marshfield, Oregon, for three residences, two store buildings, and ten lots, less fifty-five feet, in that city. The deal was consummated after Cobb had inspected the Barnett properties. Barnett, however, had not seen the properties in Marshfield, although he had made some inquiries to determine their value.

About August 24, Barnett and wife went to Marshfield and shortly thereafter returned to Walla Walla. On September 2, they brought an action for rescission of the contract upon the ground that the value of the property and its rental value were misrepresented, and that a portion of the buildings situate upon the prop-

erty extended into the public highway. They asked for a receiver of the stock of groceries upon the ground that it was being disposed of by the defendants. The application for a receiver was denied. The defendants answered, denying the allegations of fraud, and set up misrepresentations alleged to have been made by the plaintiffs as to the amount of daily business done by the grocery store; misrepresentations of the value of the stock, and as to the amount claimed to have been paid by Barnett for the home.

At the conclusion of the trial, the court held that, while there had been no misrepresentations of the values of the Marshfield property, the rental value had been overdrawn, and· materially over-stated; that the store buildings and garage extended into the highway from seven to nine feet, and that a purchaser under contract of one of the houses was refusing to make further payments because the house was not wholly on the lots contracted to be sold.

The court found that the stock of groceries had been so changed that it was impossible to order a rescission in full, and disposed of the matter as follows: The court ordered the Walla Walla home reconveyed to the Barnetts, and the Marshfield property to the Cobbs; allowed Barnetts expenses in the sum of one hundred seventy dollars for moving to Marshfield, and ordered them to return to Cobb rentals received on the Marshfield property. The court found the stock of groceries to be valued at five thousand five hundred dollars as of the date of sale, July 20, and the fixtures of the value of three thousand seven dollars and ninety cents, which sums Barnetts were entitled to receive from Cobb, less a credit of two thousand seven hundred dollars representing a mortgage placed by Barnett on the Marshfield property to secure moneys with which to

pay debts against the grocery store at the time of the transfer.

This disposition of the case did not meet the approval of either of the parties, and both have appealed.

[1] Appellant Cobb urges that the Barnetts were not entitled to any relief, unless they alleged and proved that the property tendered had been preserved in *status quo*. It is said, that since Barnetts had placed a mortgage of two thousand seven hundred dollars on the Marshfield property, it was incumbent upon them to tender the property back clear of the mortgage. We have already adverted to the fact that this mortgage was placed thereon for the express purpose of paying the outstanding indebtedness of the grocery store. This mortgage would not have been placed thereon, had it not been for the trade between the parties. The court had the power to do equity between the parties, and in so doing required Cobb to take the grocery store at $8,507.90, allowing him to offset against it the full amount of the mortgage. It can make no practical difference whether the court required Barnett to pay off the mortgage and gave judgment for the full $8,507.90, or required Cobb to take the property back with the mortgage on it, and have the judgment against him for the grocery store in the sum of two thousand seven hundred dollars less. Equity is done in either event.

[2] It is next contended that the contract of exchange contained a certain provision that prevents relief in this action. The provision was as follows:

"It is understood that the parties of the second part have personally inspected the property of the first. It is also understood that the parties of the first part have not investigated and personally inspected the property but said parties of the first part have made inquiries concerning said property of the First National Bank

of Marshfield, Oregon, and are satisfied that the property is as represented and both parties waive all claims arising by reason of said representations as to said property.''

Like provisions were before us in the cases of *Gordon v. Hillman,* 91 Wash. 490, 158 Pac. 96, and *Dieterich v. Rice,* 115 Wash. 365, 197 Pac. 1. In each of those cases, we held that the fraud established was sufficient to vitiate the provision in the contract. We think a like view should prevail here. But appellant contends that, in any event, the effect of the clause is to put appellant on notice, and to require extraordinary diligence in determining the facts with reference to the property. This may be the effect upon the mind of the signer of the contract, but we cannot think that it deprives the respondent of the right to show that an investigation of the character made would not, and did not, reveal some of the grounds urged for rescission. For example, it was found that the store buildings encroached into the street some seven to nine feet; that a contract of purchase did not describe the proper lots, and that the purchaser refused to pay further. The only investigation made by Barnetts was by telegram; the results were neither enlightening nor satisfactory, and the appellants must have known that these things could not be ascertained readily by mere inquiry, when the purchaser was six hundred miles away from Marshfield and had no previous knowledge of facts which would cause inquiry upon this line. The record shows that the store buildings were on the public highway and that only after excavation could they be moved back on the lots transferred. Nor was there any investigation regarding rental values of the property in question.

It is also urged that the court erred in holding that the store buildings were not wholly on the lots

conveyed. This depends upon the weight of the evidence introduced, and we are convinced from the record that the evidence not only preponderates in favor of the court's finding, but establishes the fact that Cobb knew of it at the time the buildings were erected. The evidence indicates that this was known to many people in Marshfield, as it appears that many of the buildings close by are also in the public highway.

[3] Lastly, it is urged by appellant Cobb that the court "sold him a grocery store." This contention is not without merit, but we fail to find that appellant has just cause for complaint. Having found appellant guilty of fraud and overreaching, the court rescinded the contract as far as possible. This it did by requiring reconveyances to put the parties in the same position they were in before the trade, with the exception of the grocery store. This it could not have tendered back to Barnett, because the evidence showed the stock to be entirely different. At the time of the trade, the value of the store was not segregated from the rest of the property transferred, so the court took evidence to determine its value. The conclusion reached by the court as to its value had, in the very nature of things, to be a compromise of the testimony offered by both parties. Inventory had been taken by Barnett on June 30, 1925, just twenty days before delivery to Cobb. Evidence was offered to show the sales during that time, and goods bought. Cobb took an inventory prior to suit, and offered evidence as to sales and also comparisons as to the amount of stock on hand at that time and the time he took the transfer from Barnett. Cobb contends that the groceries were worth approximately three thousand dollars, while Barnett insists that they were of the value of seven thousand dollars. The court awarded five thousand five hundred dollars.

Complaint is made that the court, in its memorandum

decision, referred to this award as "probably in excess of its real value." While the court may have reflected upon its own judgment in the matter, we are unable to conclude that the stricture was justified. The difficulty of establishing the true value of a stock of goods under the conditions shown here is so great that it must not be expected that any human tribunal can determine it with any great degree of precision. It was appellant's misrepresentations that brought forth the situation, and compelled the court to establish the value of the store. Appellant must, therefore, not complain too much of a condition brought about by his own hand.

Cross-appellant, Barnett, urges the inadequacy of the price allowed for the stock of groceries and fixtures. What we have just said regarding the same error assigned by appellant Cobb will sufficiently dispose of that contention.

[4] It is also urged by cross-appellant that the court erred in refusing to allow a recovery of commission in the sum of eight hundred dollars paid by Barnett in the trade of the properties. It is said that since the contract was rescinded, the whole commission should be returned. The court was evidently of the view that since, by its decision, Barnett was in effect making a sale of his grocery store and the evidence disclosed that he had been very anxious to dispose of it, he should properly pay the regular commission therefor. But since it was difficult to so apportion the commission between the store and the house, no recovery could be had. In this, we think the court erred. The commission paid by Barnett was a legitimate expense connected with the trade, and upon rescinding the contract he was entitled to be made whole. *Wisner v. Carter*, 117 Wash. 623, 201 Pac. 918.

It was not his fault that the stock of goods could not be returned to him. Nor should he be compelled to

pay a commission upon a forced sale of his store at a price fixed by the court. One who desires to sell and can fix his own price can and should pay a commission. But the purpose of the decision was merely to give a money judgment in place of the store. He should not be held for the commission upon a rescinded contract which was set aside because of the other party's fraud, and we think the six hundred dollars should have been allowed.

The court allowed one hundred seventy dollars as expenses of moving to Oregon. The record showed expenses of three hundred fifty-one dollars. There was no evidence controverting this, and it should have been allowed in that sum.

[5] The court fixed the value of the grocery store as of July 20, the date of the trade. It should have given interest on the value from that date to the date of judgment. Cross-appellant was required to return the rents received from the Marshfield property, and there was no attempt to offset the uses of the properties. The grocery store became converted, at the time of the trade, to the use of the appellant Cobb, and the damages for inability to return is the value of the store with interest from the date of conversion. *Putnam v. Bolster*, 216 Mass. 367, 103 N. E. 942.

[6] Error is assigned upon the refusal of the court to allow costs to Barnett. The allowance of costs in cases of this character is within the discretion of the trial court. Considering the whole record and the results reached we are unable to say that the court abused its discretion.

The judgment is reversed, with instructions to modify the same in accordance with this opinion.

Tolman, C. J., Holcomb, Bridges, and Fullerton, JJ., concur.