Fuld, J. (dissenting).
If a party has actually induced another to enter into a contract by means of fraud—and so the complaint before us alleges—I conceive that language may not be devised to shield him from the consequences of such fraud. The law does not temporize with trickery or duplicity, and this court, after having weighed the advantages of certainty in contractual relations against the harm and injustice which result from fraud, long ago unequivocally declared that “ a party who has perpetrated a fraud upon his neighbor may [not] * * * contract with him in the very instrument by means of which it was perpetrated, for immunity against its consequences, close his mouth from complaining of it and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule but the exception.” (Bridger v. Goldsmith, 143 N. Y. 424, 428.) It was a concern for similar considerations of policy which persuaded Massachusetts to repudiate the contrary rule which it had initially espoused. “ The *324 same public policy that in general sanctions the avoidance of a promise obtained by deceit”, wrote that state’s Supreme Judicial Court in Bates v. Southgate (308 Mass. 170, 182), “ strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept * * * and act upon agreements containing * * * exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law.”
It is impossible, on either principle or reasoning, to distinguish the present case from the many others which this court has decided. (See, e.g., Bridger v. Goldsmith, 143 N. Y. 424, 428, supra; Jackson v. State of New York, 210 App. Div. 115, affd. 241 N. Y. 563; Ernst Iron Works v. Duralith Corp., 270 N. Y. 165, 169; Angerosa v. White Co., 248 App. Div. 425, 431, affd. 275 N. Y. 524; Sabo v. Delman, 3 N Y 2d 155, 162; Crowell-Collier Pub. Co. v. Josefowitz, 5 N Y 2d 998, also decided today.) As far back as 1894, we decided, in the Bridger case (143 N. Y. 424, supra), that the plaintiff was not prevented from bringing an action for fraud, based on oral misrepresentations, even though the written contract provided that it was “understood and agreed ” that the defendant seller had not made,
‘1 for the purpose of inducing the sale * * * or the making of this agreement * * * any statements or representations * * * other than ’ ’
the single one therein set forth (pp. 426-427). And, just today, we are holding, in the Crowell-C oilier Publishing case, that the plaintiffs were not barred from suing the defendants for fraud in inducing them to make the contract, despite its recital that
*325 “ This Agreement constitutes the entire understanding between the parties, [and] was not induced by any representations * * * not herein contained ’ \
In addition, in Jackson v. State of New York (210 App. Div. 115, affd. 241 N. Y. 563, supra), the contract provided that
the contractor (plaintiff’s predecessor in interest) agreed that he had satisfied himself by his own investigation regarding all the conditions of the work to be done and that his conclusion to enter into the contract was based solely upon such investigation and not upon any information or data imparted by the State.
It was held that even this explicit disavowal of reliance did not bar the plaintiff from recovery. In answering the argument that the provision prevented proof either of misrepresentation by the defendant or reliance on the part of the plaintiff, the Appellate Division, in an opinion approved by this court, wrote: “ A party to a contract cannot, by misrepresentation of a material fact, induce the other party to the contract to enter into it to his damage and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract. The effect of misrepresentation and fraud cannot be thus easily avoided ” (pp. 119-120).
Although the clause in the contract before us may be differently worded from those in the agreements involved in the other cases decided by this court, it undoubtedly reflects the same thought and meaning, and the reasoning and the principles which the court deemed controlling in those cases are likewise controlling in this one. Their application, it seems plain to me, compels the conclusion that the complaint herein should be sustained and the plaintiff accorded a trial of its allegations.
It is said, however, that the provision in this contract differs from those heretofore considered in that it embodies a specific and deliberate exclusion of a particular subject. The quick answer is that the clause now before us is not of such a sort. On the contrary, instead of being limited, it is all-embracing, encompassing every representation that a seller could possibly make about the property being sold and, instead of represent *326 ing a special term of a bargain, is essentially “ boiler plate.” (See Contract of Sale, Standard N. Y. B. T. U. Form 8041; Bicks, Contracts for the Sale of Realty [1956 ed.], pp. 79-80, 94-95.) The more elaborate verbiage in the present contract cannot disguise the fact that the language which is said to immunize the defendants from their own fraud is no more specific than the general merger clause in Sabo v. Delman (3 N Y 2d 155, supra) and far less specific than the provision dealt with in the Jackson case (210 App. Div. 115, affd. 241 N. Y. 563, supra) or in Crowell-Collier.
In any event, though, I cannot believe that the outcome of a case such as this, in which the defendant is charged with fraud, should turn on the particular language employed in the contract. As Judge Augustus Hand, writing for the Federal Court of Appeals, observed, ‘ ‘ the ingenuity of draftsmen is sure to keep pace with the demands of wrongdoers, and if a deliberate fraud may be shielded by a clause in a contract that the writing contains every representation made by way of inducement, or that utterances shown to be untrue were not an inducement to the agreement,” a fraudulent seller would have a simple method of obtaining immunity for his misconduct. (Arnold v. National Aniline & Chem. Co., 20 F. 2d 364, 369.)
The guiding rule — that fraud vitiates every agreement which it touches—has been well expressed not only by the courts of this state, but by courts throughout the country and by the House of Lords in England. And, in recognizing that the plaintiff may assert a cause of action in fraud, the courts have not differentiated between the type or form of exculpatory provision inserted in the contract. It matters not, the cases demonstrate, whether the clause simply recites that no representations have been made or more fully stipulates that the seller has not made any representations concerning certain enumerated subjects and that the purchaser has made his own investigation and has not relied upon any representation by the seller, not embodied in the writing. (See, e.g., Sabo v. Delman, 3 N Y 2d 155, 161-162, supra; Ernst Iron Works v. Duralith Corp., 270 N. Y. 165, 169, supra; Bridger v. Goldsmith, 143 N. Y. 424, 428, supra; Angerosa v. White Co., 248 App. Div. 425, 431, affd. 275 N. Y. 524, supra; Jackson v. State of New York, 210 App. Div. 115, affd. 241 N. Y. 563, supra; Pearson *327 & Son v. Dublin Corp., [1907] A. C. 351, 353-354, 362; Arnold v. National Aniline & Chem. Co., 20 F. 2d 364, 369, supra; Lutfy v. Roper & Sons Motor Co., 57 Ariz. 495, 506; Omar Oil Co. v. MacKenzie Oil Co., 33 Del. 259, 289-290; Jordan v. Nelson, 178 N. W. 544 [Iowa]; Bryant v. Troutman, 287 S. W. 2d 918, 921 [Ky.]; Bates v. Southgate, 308 Mass. 170, 182, supra; Ganley Bros. v. Butler Bros. Bldg. Co., 170 Minn. 373, 376-377; Brown v. Ohman, 42 So. 2d 209, 212-213 [Miss.]; Martin v. Harris, 121 Neb. 372; Blacknall v. Rowland, 108 N. C. 554, 557-558; Pennsylvania Turnpike Comm. v. Smith, 350 Pa. 355, 361-362; Dallas Farm Mach. Co. v. Reaves, 307 S. W. 2d 233, 239 [Texas]; Dieterich v. Rice, 115 Wash. 365; see, also, 3 Williston, Contracts [Rev. ed., 1936], §§ 811, 811A; Corbin, Contracts [1951], Vol. 3, § 578; Vol. 6, § 1516; Restatement of Contracts, §573.)
In England, in the Pearson case ([1907] A. C. 351, supra), the contract to perform certain construction work provided that
the contractor 11 should satisfy himself ” as to various specified items connected with the job and that the defendant corporation ‘1 did not hold itself responsible for the accuracy of [such] information ” (p. 351).
After performing the contract, the plaintiffs brought a deceit action, claiming damages for false representations as to the very items concerning which they had agreed they would satisfy themselves. The House of Lords reversed the judgment directed for the defendants and held that the action could be maintained; the Lord Chancellor, after noting that “ The contract contained clauses * * * to the effect that the contractors must not rely on any representation * * * but must ascertain and judge of the facts for themselves ” (p. 353), went on to say (pp. 353-354):
“ Now it seems clear that no one can escape liability for his own fraudulent statements by inserting in a contract a clause that the other party shall not rely upon them.”
Lord Ashbourne, concurring with the Lord Chancellor, pointed out that the clause relied upon ‘ ‘ might in some cases be part of a fraud, and might advance and disguise a fraud ” (p. 360) and Lord Hereford, also concurring, declared (p. 362) that, if the “ protecting clause ” be inserted fraudulently,
*328 ‘1 When the fraud succeeds, surely those who designed the fraudulent protection cannot take advantage of it. Such a clause would be good protection against any mistake or miscalculation, but fraud vitiates every contract and every clause in it.”
In the Dieterich case (115 Wash. 365, supra), the contract contained the provision that
“ The land is sold to [the plaintiff buyer] * * * with the understanding that he has personally and carefully inspected said premises, and is purchasing the same by said inspection and not from any other sayings or inducements by [the seller] * * * and there has been no other inducements other than recited herein ’ ’.
Despite this explicit disclaimer of reliance and inducement, the Washington Supreme Court decided that the recital did not bar the plaintiff from showing ‘1 the fraudulent nature of the contract” (p. 373) and, in the course of its opinion, observed (p. 368) that the contention of the defendants to the contrary was “ effectually answered by the court of appeals of New York, in the case of Bridger v. Goldsmith, 143 N. Y. 424 ”.
In Martin v. Harris (121 Neb. 372, supra), the agreement recited:
“ There have been no representations of the reasonable value of any of the properties herein described made by or to either party to this contract. Each party is relying upon his own judgment of such values after a personal inspection of the properties.”
The plaintiff, alleging that the defendant fraudulently misrepresented the value of the property, sought damages. Again, despite the explicit statement that such a representation had not been made and the specific disavowal of reliance thereon, the court upheld the plaintiff’s right to bring the action (p. 376).
In the Ganley case (170 Minn. 373, supra), too, the disclaimer was quite specific, reading in this way:
“ The [plaintiff] contractor has examined the said contracts * * * and the specifications and plans forming a part thereof, and is familiar with the loca *329 tion of said work and the conditions under which the same must be performed * * * and is not relying upon any statement made by the company in respect thereto.”
In deciding that a defendant could not protect himself against liability for fraud by such a provision or, indeed, by any language, the court wrote in no uncertain terms (p. 377):
“ The law should not and does not permit a covenant of immunity to be drawn that will protect a person against his own fraud. Such is not enforceable because of public policy. Industrial &• General Trust, Ltd. v. Tod, 180 N. T. 215 * * *. Language is not strong enough to write such a contract. Fraud destroys all consent. It is the purpose of the law to shield only those whose armor embraces good faith. Theoretically, if there is no fraud the rule we announce is harmless. If there is fraud the rule we announce is wholesome. Whether the rule is effective depends upon the facts. Public interest supports our conclusion.”
And, said the court, while the argument that a party should have the right “ to let his work to a certain person because the other will therein agree that he relies and acts only upon his own knowledge and not upon the representations of his adversary ”, might on first thought seem plausible, it does not stand analysis. ‘1 It may be desirable in dealing with unscrupulous persons to have this clause as a shield against wrongful charges of fraud. But, if there is no fraud, that fact will be established on the trial. The merits of defendant’s claim reach only the expense and annoyance of litigation. But every party should have his day in court. We are unable to formulate a rule of law sustaining defendant’s contention which would not at the same time give opportunities for the commission of fraud for which the wronged party would have no redress ” (p. 376).
And in the Lutfy case (57 Ariz. 495, supra), the contract of sale contained as specific a disavowal of reliance upon a particular represggj^yjgn as could be written:
reed that there is no reprethe ‘ year model ’ of said
*330 property, as hereinbefore stated, correctly states the year in which said property was manufactured, but is merely used by the parties hereto for convenience in describing it. * * * Purchaser agrees that he has made an independent investigation of the property and has relied solely upon his own investigation with reference thereto in entering into this contract, and has placed no reliance and acted upon no representations or warranties upon the part of the Seller.”
The plaintiff, suing for damages, alleged that the defendant had falsely represented the year model of the automobile which he purchased, and the high court of Arizona held that he could prove that such a representation had been made and that he had relied upon it, notwithstanding the contract’s most explicit recital to the contrary (p. 506):
‘ ‘ If binding upon [plaintiff] appellant, it would protect appellee from the consequences of any fraudulent misrepresentations it might have made to appellant to induce bim to sign the contract and, as we see it, any provision in a contract making it possible for a party thereto to free himself from the consequences of his own fraud in procuring its execution is invalid and necessarily constitutes no defense.”
The cases cited—all upholding the sufficiency of a complaint based on fraud no matter how the exculpatory language in the contract is phrased—show how firmly established the rule is, and the passages quoted show how compelling are the reasons for the rule. Nor is their force or value weakened or impaired by the decisions upon which the court now appears to rely. Except for Cohen v. Cohen (3 N Y 2d 813), no one of them has anything to do with the adequacy of the complaint as a pleading; two are concerned with the proof adduced at the trial (Schumaker v. Mather, 133 N. Y. 590; Ernst Iron Works v. Duralith Corp., 270 N. Y. 165, supra), while the third deals with the subject of res judicata (Sylvester v. Bernstein, 283 App. Div. 333, affd. 307 N. Y. 778).
In the Ernst Iron Works case, |tt^as, as I have noted, taken after trial and wasJ[^^H proof and not, as is the present appeal. ^^^^■k.the com-
*331 plaint. The contract contained both a blanket merger clause and a recital that the defendant ‘1 makes no representation regarding previous sales ” in Buffalo, where the plaintiff did business. Notwithstanding that provision, the plaintiff claimed that he had relied upon a representation by the defendant’s salesman that the product had not been sold in that city, and testimony to that effect was received at the trial. The court ■did reverse the judgment for the plaintiff, but not on any theory that the specific disclaimer clause barred suit or that the evidence was inadmissible because of it. It was the court’s conclusion, based on the evidence adduced at the trial, first, that the false representation attributed to the defendant had not been made (270 N. Y., at pp. 169-170); second, that, in any event, the defendant’s salesman did not have authority to make such a representation and the plaintiff knew this (pp. 170-171); and, finally, that “ it [was] clear [from the proof at the trial] that the plaintiff did not rely upon the statement” (pp. 171-172). And, most significantly, the court did not question the general principle but affirmed it, stating that 11 A rogue cannot protect himself from liability for his fraud by inserting a printed clause in his contract ” (270 N. Y, at p. 169).
As to Cohen v. Cohen, I dissented from the decision there made and still consider it to have been wrongly decided. Constrained to accept it, I do so, but I cannot subscribe to extending its application beyond its own peculiar fact setting. A husband and wife had separated; there were bitter mutual recriminations followed by three separate lawsuits. The parties were ultimately reconciled and their lawyers drew a settlement agreement, which they executed, reciting that the husband had not made any representations “as to the continuation of the marital status ”. The wife sometime later brought another action, alleging that her husband had falsely represented that he “would effect a reconciliation with [her], return to live with her * * * permanently, and permanently resume their marital relationship ”, As is quite evident, the Cohen case is a most unusual one, not only because it involved an agreement designed to settle pending marital litigation, but because of the extraordinary and promissory nature of the misrepresentation alleged. Indeed, the only resemblance claimed for the cases — that is, for Cohen and the present one—is that in both *332 there is a specific disclaimer by the plaintiff of the very representations charged against the defendant. However, as noted above (pp. 325-326), since the provision in the contract before us encompasses every representation which a seller of real estate could possibly have made, including those alleged, even the asserted similarity does not in fact exist.
Contrary to the intimation in the court’s opinion (p. 323), the nonreliance clause cannot possibly operate as an estoppel against the plaintiff. Essentially equitable in nature, the principle of estoppel is to be invoked to prevent fraud and injustice, not to further them. The statement that the representations in question were not made was, according to the complaint, false to the defendant’s knowledge. Surely, the perpetrator of a fraud cannot close the lips of his victim and deny him the right to state the facts as they actually exist. Indeed, the contention that a person, such as the defendant herein, could urge an estoppel was considered and emphatically disposed of in Bridget v. Goldsmith with this statement: “ The question now is whether [the no-representation non-inducement clause] can be given the effect claimed for it by the learned counsel for the defendant, to preclude the plaintiff from alleging fraud in the sale and pursuing in the courts the remedies which the law gives in such cases. It cannot operate by way of estoppel for the obvious reason that the statements were false to the defendants-knowledge. He may, indeed, have relied upon its force and efficacy to protect him from the consequences of his own fraud, but he certainly could not have relied upon the truth of any statement in it. A mere device of the guilty party to a contract intended to shield himself from the results of his own fraud, practiced upon the other party, cannot well be elevated to the dignity and importance of an equitable estoppel” (143 N. Y. 424, 427-428, emphasis supplied; see, also, Angerosa v. White Co., 248 App. Div. 425, 433-434, affd. 275 N. Y. 524, supra).
The rule heretofore applied by this court presents no obstacle to honest business dealings, and dishonest transactions ought riot to receive judicial protection. The clause in the contract before us may lend support to the defense and render the plaintiff’s task of establishing its claim more difficult, but it should not be held to bar institution of an action for fraud. Whether *333 the defendants made the statements attributed to them and, if they did, whether the plaintiff relied upon them, whether, in other words, the defendants were guilty of fraud, are questions of fact not capable of determination on the pleadings alone. The plaintiff is entitled to its day in court.
Chief Judge Conway and Judges Desmond, Dye, Froessel and Van Voorhis concur with Judge Burke; Judge Ftjld dissents in a separate opinion.
Order reversed, etc.