Teresa E. Kilroy *vs.* Harry Schimmel.
Harry Schimmel *vs.* Teresa E. Kilroy.

Suffolk.    October 19, 1922. — December 4, 1922.

Present: Rugg, C.J., Braley, Pierce, Carroll, & Jenney, JJ.

*Contract,* In writing.    *Sale.*

A contract, prepared and signed by a dealer in cotton waste in Boston, was sent to a dealer in New York and was signed by him and in substance was as follows: "We Beg To Confirm Having Sold To You The Following:" then followed the terms, quantity and price, the material, designated as "New Bedford Undusted Picker," to be shipped on open bill of lading to the purchaser, Newark, New Jersey; and under the heading, "Remarks," this statement appeared: "As per telephone conversation with the purchaser." Upon the purchaser's memorandum of purchase there were printed the words: "Rules of the American Cotton Waste Exchange to Govern this Sale, unless Otherwise Stipulated." An action by the seller for the purchase price was tried with an action by the purchaser for alleged breach of warranty and there was evidence introduced by the seller that by the term, "New Bedford Undusted Picker," no particular quality was designated and that the expression was used merely to describe the place where the goods originated. Evidence introduced by the purchaser tended to show that the term meant in the trade a quality equal to the average mill run of the New Bedford Mills, which was the best grade of picker waste in the country; that, in the course of the telephone conversation with the seller previous to the sale, he asked him if the waste was average mill run New Bedford Undusted Picker, that the seller said it was, that, relying on this statement by the seller, he agreed to buy the goods, and that, when shipped, the goods were not of the quality ordered. The judge left to the jury the determination of the significance of the words, "New Bedford Undusted Picker," instructing them that, if the words had no trade significance, they must be given their "ordinary, everyday meaning." The jury found for the seller. *Held,* that

(1) The contract in writing showed on its face that it included the entire agreement of the parties and comprised all that was necessary to constitute a contract;

(2) The writing was not a mere bill of parcels, or an incomplete record of the agreement, and the oral warranty could not be added to the written contract:

(3) The reference, by the words, "as per telephone conversation with . . . [the purchaser]," did not give the purchaser the right to show an oral warranty: the reference meant 'no more than that there had been a previous conversation from which the final contract originated, and it did not make the conversation admissible to vary the written contract.

At the trial of the action above described, it appeared that there was a provision in the "Rules of the American Cotton Waste Exchange" that, "If claim of inferior quality is not made by the buyer in writing to the seller within ten business days after receipt of any shipment or within three days after he discovers the goods to be false packed, the shipment will be deemed accepted;" and that, as to the first carload shipped, the purchaser did not make any claim as to the failure of the goods to be up to the standard ordered for more than ten days after they were received. *Held*, that a ruling and instruction, that the goods must be taken to have been accepted by the purchaser, were warranted.

As to other shipments in evidence at the trial above described, the judge ruled that the provisions of the sales act of Massachusetts applied. The jury found for the plaintiff. *Held*, that

(1) The jury's finding under the judge's instructions must mean, either that the plaintiff's contention, that the words "New Bedford Undusted Picker" had no trade significance, was adopted, or, if they had a trade significance, that the goods shipped satisfied the requirements of the description;

(2) The purchaser was not harmed by a refusal of the judge to give instructions which were predicated on findings both that the quoted words had a trade significance and that their requirements were not fulfilled.

CONTRACT for the purchase price of goods shipped to the defendant in accordance with the provisions of the contract in writing described in the opinion. Writ dated January 3, 1919. Also an action of

CONTRACT by the defendant in the first. action against the plaintiff therein for damages resulting from an alleged breach of warranty as to the quality of the goods. Writ dated February 10, 1919.

In the Superior Court, the actions were referred to an auditor and, after the filing of his report, were tried together before *Morton*, J. Material evidence is described in the opinion. At the close of the evidence, Schimmel asked for the following rulings in the first action:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. This case is controlled by the provisions of the sales act of this Commonwealth and not by article 3 of the Trading Rules of the American Cotton Waste Exchange.

"3. If the jury find that Schimmel examined the goods shipped

under the first contract, discovered that they were inferior to the goods contracted for, and notified Kilroy to that effect within a reasonable time under all the circumstances, he had a right to reject the goods, and to rescind the contract provided the goods were not what the contract called for."

"6. If the jury find that the term New Bedford Undusted Picker had no trade significance, but that Kilroy agreed to deliver an average mill run of Undusted Picker of the New Bedford mills, and that the goods shipped were not such, Kilroy cannot recover in this action."

The ruling numbered 2 was given as to the first carload, in the circumstances described in the opinion. It was refused as to all others. The other rulings were refused.

In the second action, Schimmel asked for the following rulings:

"1. This case is controlled by the provisions of the sales act of this Commonwealth and not by Article 3 of the Trading Rules of the American Cotton Waste Exchange.

"2. If the jury find that Schimmel examined the goods shipped under the first contract, discovered that they were inferior in quality to the goods contracted for, and notified Kilroy to that effect within a reasonable time after their arrival at Newark, under all the circumstances, he had a right to reject the goods and rescind the contract, and also the other contracts."

"5. If the jury find that the term New Bedford Undusted Picker had no such trade significance, but that Kilroy agreed to sell an average mill run undusted picker of the New Bedford mills, and that the goods shipped were not such, then Schimmel was entitled to reject the goods, rescind the contracts, and to recover in this action."

The ruling numbered 2 was refused as to the first carload in the circumstances described in the opinion, and was given as to all others. The other rulings were refused.

There was a verdict for the plaintiff in the first action in the sum of $5,702.80, which, on motion, later was increased to $6,482.75 by the addition of interest from the date of the writ to the filing of the report of the auditor, omitted by the jury through inadvertence. In the second action, the verdict was for the defendant. Schimmel alleged exceptions.

*J. E. McConnell,* for Schimmel.

*C. W. Dealtry,* for Kilroy.

CARROLL, J.  These are two cross actions of contract, arising out of three written agreements providing for the sale by Kilroy (hereinafter called the plaintiff), and the purchase by Schimmel (hereinafter called the defendant), of five carloads of cotton waste, described in the agreements as "New Bedford Undusted Picker." The plaintiff was a dealer in cotton waste, in Boston; the defendant a dealer in the same material in New York.  The first action is for the purchase price of merchandise which the defendant refused to accept.  In the second action it is alleged there was a failure to deliver goods according to the quality provided for in the agreement.

The first contract, which was prepared by the plaintiff, was dated October 29, 1918.  It stated: "We Beg To Confirm Having Sold To You The Following."  Then follow the terms, quantity and price, the material, designated as "New Bedford Undusted Picker," to be shipped on open bill of lading to Harry Schimmel, Newark, New Jersey; and under the heading "Remarks" the statement appears: "As per telephone conversation with Mr. Schimmel."  The contract was signed by the plaintiff and "Accepted Harry Schimmel."  Upon Schimmel's memorandum of purchase there were printed the words: "Rules of the American Cotton Waste Exchange to Govern this Sale, unless Otherwise Stipulated."  The remainder of the writing was like the contract prepared by the plaintiff.  The second contract, dated October 29, 1918, for two carloads, in so far as material, was substantially the same as the first contract, except that under the printed heading "Remarks" there was the statement, "As per telephone conversation of even date with Mr. Schimmel."  The other contract dated November 21, 1918, for two carloads, was similar except that the telephone conversation with Schimmel was stated as "on yesterday;" and that after the words "New Bedford Undusted Picker" there was added, "same quality as had."

The plaintiff testified that by the term "New Bedford Undusted Picker" no particular quality was designated, and that the expression was merely to describe the place where the goods originated.  The plaintiff introduced evidence tending to show that it had no particular quality significance and that there was

no standard grade of picker waste known to the trade as "New Bedford Undusted Picker." The defendant testified that the words "New Bedford Undusted Picker" meant in the trade a quality equal to the average mill run of the New Bedford Mills, which was the best grade of picker waste in the country; that the goods shipped by the plaintiff were much dirtier and shorter in staple than New Bedford Undusted Picker and inferior in value; that, in the course of the telephone conversation with the plaintiff previous to the sale, he asked her if the waste was average mill run New Bedford Undusted Picker, that she said it was, and relying on her statement he agreed to buy the first carload.

The auditor found for Kilroy both in her action against Schimmel and in the action of Schimmel against her. In the Superior Court the jury returned a verdict for her in each case.

The judge instructed the jury in effect, that if the expression "New Bedford Undusted Picker" had a trade significance it was for them to decide whether the goods came up to that quality which the trade term required; and that if the words had no trade significance, they must be given their "ordinary, everyday meaning." Concerning the telephone conversation, preceding the signing of the contract, in which the defendant claimed the plaintiff said the waste was the average mill run of New Bedford waste, which conversation was denied by the plaintiff, who testified that in this talk there was no mention of quality save as contained in the words "New Bedford Undusted Picker," the jury were instructed that they were to decide whether the plaintiff made the statement as claimed by the defendant. If they found that she made the statement, the evidence was to be used solely for the purpose of determining whether the term "New Bedford Undusted Picker" had a trade significance. If there was no question "of trade meaning of those words in this case, the evidence which has been offered in regard to that alleged telephonic communication would not have been admitted and you could not consider it, because you cannot change a written contract by any oral evidence."

The defendant excepted to these instructions. His claim is that the telephone conversation between the parties prior to the signing of the written contract was admissible to alter or

vary it, that by the words "as per telephone conversation with Mr. Schimmel" the conversation was incorporated into the written contract, and that without reference to the trade significance of the term "New Bedford Undusted Picker," he could rely on the oral warranty to ship goods of the quality "average mill run New Bedford undusted picker."

The written contract shows on its face that it includes the entire agreement of the parties and comprises all that was necessary to constitute a contract. The names of the parties, price, terms of sale, quality of the goods, and all the essential elements of a complete contract are present. The writing was not a mere bill of parcels, or an incomplete record of the agreement, and the oral warranty could not be added to the written contract. *Mears* v. *Smith,* 199 Mass. 319, 322. *Commonwealth Trust Co.* v. *Coveney,* 200 Mass. 379, 381. *Cawley* v. *Jean,* 218 Mass. 263. *Glackin* v. *Bennett,* 226 Mass. 316.

The words "as per telephone conversation with Mr. Schimmel" incorporated nothing into the written agreement. The terms of the agreement as completed by the writing, could not be varied by the prior conversation. If the parties agreed that the goods were to be of average mill run waste they could have made such provision; a mere reference to the earlier or contemporaneous talk did not give the defendant the right to show the oral warranty. The reference meant no more than that there had been a previous conversation from which the final contract originated, and it did not make the conversation admissible to vary the written contract. There was no error in the instructions given on this point.

The contract signed by the defendant contained the statement, "Rules of the American Cotton Waste Exchange to Govern this Sale, unless Otherwise Stipulated." Article 3, Section 2 of the rules of the American Cotton Waste Exchange provided: "If claim of inferior quality is not made by the buyer in writing to the seller within ten (10) business days after receipt of any shipment or within three days after he discovers the goods to be false packed, the shipment will be deemed accepted." It was undisputed that the carload under the first contract was shipped October 31, 1918, and arrived at its destination November 8, 1918. It was not until more than ten days thereafter, on

November 26, that Schimmel made complaint as to quality. The question of complying with this rule of the American Cotton Waste Exchange was of materiality only with reference to the first shipment. As to the other shipments, the rule was complied with, and the jury were so instructed.

The merchandise shipped under the three contracts was of substantially the same quality. The waste came from the same mill in New Bedford. The defence that it was not in accordance with the quality called for by the trade name, was the same as the claim in the action against Kilroy. In returning a verdict for the plaintiff in the first action, and for the defendant in the second, the jury must have been satisfied that the words "New Bedford Undusted Picker" had no trade significance, or if they did, that the merchandise was according to the designation. They could not have found as they did with reference to the goods shipped under the second and third contracts, unless they were satisfied that the words "New Bedford Undusted Picker" had no trade significance; and if the words did have this significance, that the waste was in accordance with the trade designation. The jury were fully instructed on this point. They were told that the rule of the exchange applied only to the first carload, because as to the subsequent carloads the claim of imperfect material was made within ten days. In view of these considerations we do not think the defendant was harmed by the failure to give the third request, or the second request, in so far as the first carload was concerned in the action against Schimmel; nor by the refusal to give the second request in the case against Kilroy as to the first carload, and the refusal of the first request in this action, nor by the instructions given; even if there were error of law in the refusal and in the instructions given on this aspect of the case, which we do not mean to intimate.

In each case exceptions are overruled.

*So ordered.*