CHARLES HOWARD BATES *vs.* RAY E. SOUTHGATE & others.

Essex. November 6, 1940. — January 28, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Fraud. Contract,* Validity, What constitutes. *Sale,* Validity, What constitutes contract of sale, "Confirmation slip."

Evidence warranted a finding that a "confirmation slip," sent by a seller of corporate stock to and accepted by the buyer following conversations between the parties, embodied their final contract of sale; and it was immaterial that the buyer did not sign the slip.

A provision of a contract attempting to protect a party against the consequences of his own fraud inducing the contract is against public policy and is void; it is immaterial whether the fraud was "antecedent" to the contract or "entered into the making" of it.

The fact, that a "confirmation slip" embodying a contract of sale by a broker of shares of stock of a corporation stated an agreement that "in making the transaction" the seller made no representation other than to identify the security and to state the price, was no defence to an action of contract by the buyer against the seller for recovery of the price paid, brought after rescission of the contract because of material fraudulent representations relating to the business of the corporation which were made personally by the seller to the buyer and which induced the sale.

CONTRACT. Writ in the First District Court of Essex dated May 21, 1938.

On removal to the Superior Court, the case was tried before *Brogna,* J., and a verdict was returned for the plaintiff in the sum of $7,046.

*L. Wheeler, Jr., (H. A. Reynolds* with him,) for the defendants.

*E. O. Proctor,* for the plaintiff.

QUA, J. The plaintiff did business as an "investment broker" in Salem. The defendants as partners carried on a brokerage business in Boston under the name of Southgate and Company. In this action of contract the plaintiff seeks to recover the purchase price paid by him to the defendants for five hundred shares of stock in Victoria Gypsum Company which he bought from them and later

tendered back to them for the purpose of rescission after
he learned, as he contends, that he had been induced to
make the purchase by a fraudulent representation on their
part. The defendants rely upon a "confirmation slip,"
sent by the defendants to the plaintiff, at the bottom of
which was printed the following: "It is agreed between
broker [defendants] and customer [plaintiff]: 1. That in
making this transaction, we make no representation other
than to identify the security and state the price. 2.
That in this transaction we are acting solely as prin-
cipals and not as agents." Below this appeared the printed
signature "Southgate & Co." The only point raised by
the exceptions is whether the evidence justified submission
of the case to the jury.

At the beginning the question arises and has been ar-
gued whether the "confirmation slip" ever became part
of the contract of purchase and sale of the stock. The
evidence on this point came from the testimony of the
plaintiff himself. He testified to a series of telephone talks
on May 6, 1937, between himself and a member of the
firm of Southgate and Company wherein the parties came
to terms upon the sale and purchase of five hundred shares
of the gypsum stock at $12 a share. On the following day
the plaintiff received the "confirmation slip" from the
defendants. The plaintiff testified that he used confirma-
tion slips in his own business; that he could have refused
to pay for the stock, if he did not want to take it on the
terms stated in the slip; that there "wasn't the slightest
question" but that he could have cancelled the order on
May 6 before he received the "confirmation slip"; that
he was content to pay for the stock and to take delivery
on the terms set forth in the slip, and that he did so; that
he expected his own customers to go through with their
deals on the terms of his confirmation slips or "call the
deal off"; that he did not expect to do anything different
as a customer of Southgate and Company than he would
expect of his own customers; that on May 19, after he
had received the confirmation slip but, as the jury could
find, before he knew that the representation was false, he

"elected to go through, well knowing that the terms were that Southgate was making no representation with respect to this transaction other than to identify the security and state the price."

Upon this evidence the jury could find, if they were not bound to find, that at the time of the telephone conversations both parties expected a confirmation slip to be delivered later as the embodiment of the bargain and regarded the slip, after its delivery and acceptance, as expressing the final terms of the contract between them. The slip stated the names of seller and buyer, the subject matter of the sale, the price, and the terms of payment as "cash transaction." It contained all the essential elements of a contract. Even though previous oral conversations would be enough in themselves to establish an oral contract the parties may, nevertheless, by mutual understanding postpone the culmination of their negotiations into a contract to the later preparation and delivery of a written instrument.[1] It is immaterial that the plaintiff did not sign the "confirmation slip." *Thomas* v. *Barnes*, 156 Mass. 581, 583, 584. *Glackin* v. *Bennett*, 226 Mass. 316, 320. *Gould* v. *Converse*, 246 Mass. 185, 188. *Greaney* v. *McCormick*, 273 Mass. 250, 253. Williston on Contracts (Rev. Ed.) § 90A.

On the question of fraud there was evidence that before the plaintiff bought the stock one of the defendant partners stated to the plaintiff, as an inducement to buy, that the gypsum company had received an order for forty thousand tons of gypsum to be delivered in New York at $2.66 a ton, upon which the company would derive a profit of about $1 a ton, and that the plaintiff relied upon this statement in agreeing to buy, in accepting the "confirmation slip," and in paying for the stock. There was no

---

[1] *Doten* v. *Chase*, 237 Mass. 218, 220. *Kilroy* v. *Schimmel*, 243 Mass. 262, 267. *Gould* v. *Converse*, 246 Mass. 185, 188. *Long* v. *Agricultural Ins. Co.* 257 Mass. 240, 243. *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.* 283 Mass. 383, 387. See *Ehrlich* v. *United Smelting & Aluminum Co.* 252 Mass. 12, 15; *Bresky* v. *Rosenberg*, 256 Mass. 66, 74–75; *Peerless Petticoat Co.* v. *Colpak-Van Costume Co.* 273 Mass. 289, 292; *McNulty* v. *Whitney*, 273 Mass. 494, 501; *Duggan* v. *Matthew Cummings Co.* 277 Mass. 445; *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 217. Compare *Bodell* v. *Sawyer*, 294 Mass. 534, 540.

evidence that the defendants by any statement on their part withdrew or corrected the alleged representation, and the evidence that the plaintiff in fact still continued to rely upon it and was induced by it to accept the confirmation slip as the contract between the parties was before the jury for their consideration. The defendants denied having made any such representation, but admitted that the company had not received such an order and that they knew it had not. When taken in connection with other evidence in the case, which need not be stated, as to the history and prospects of the gypsum company, there can be no doubt that a representation as to an order for forty thousand tons at the price stated could be found to have been material as an inducement to buy the stock, and that upon the evidence just recited the verdict for the plaintiff can be sustained, unless as matter of law the provisions of the "confirmation slip" constitute a defence. *Gurney* v. *Tenney*, 197 Mass. 457, 465. *Schleifer* v. *Worcester North Savings Institution*, 306 Mass. 226, 228. Indeed, there has been no argument to the contrary.

The defendants point to the "confirmation slip" and urge that therein the parties have contracted that no representation, and so of course no fraudulent representation, has been made; that the plaintiff is bound by the contract and has in effect agreed to take the stock at all events, whether he has been defrauded or not. The plaintiff may urge in reply that the jury could find that in real fact there was a fraudulent representation; that he was induced by it to purchase the stock; that even if the "confirmation slip" became the embodiment of the contract or a part of the contract, he was induced to accept the slip by the same fraud by which he was induced to purchase; and that if it is the policy of the law to refuse to honor a contract procured by fraud, that policy extends to all contracts and to all parts of contracts, as much to provisions inserted by the opposite party for the purpose of escaping the consequences of his own wrong as to any other part.

In *Cannon* v. *Burrell*, 193 Mass. 534, 536, this court

refused to recognize an attempted rescission by a buyer of goods who had signed an order wherein it was stated that separate agreements with salesmen were not binding, and that the sale was "made under inducements and representations herein expressed and no others." The defendant there contended that the plaintiff's salesman had represented that "he [the salesman] would give him [the defendant] exclusive sale of said goods in Rockland and vicinity" (page 535). It will be noted that the alleged representation was promissory in character and not an express representation of existing fact, although there was evidence from which possibly an inference might have been drawn that the salesman did not intend literally to keep his promise. The court cites no Massachusetts case dealing with the effect of actual fraudulent representations upon a contract containing a clause that no representations have been made. The decision seems to have been grounded principally upon lack of authority of the salesman to vary the terms of the order (see page 536).

*Colonial Development Corp.* v. *Bragdon,* 219 Mass. 170, was an action of contract to recover the purchase price of land sold, with a cross action for deceit. The contract contained this clause: "No agent of this company has authority . . . to make any reference, representation or agreement not contained in this contract and none not contained herein shall be binding upon the seller, or in any wise effect [*sic*] the validity of this contract or form any part hereof, but all statements made have been merged and set forth herein" (page 173). It was held that because of this provision previous false and fraudulent representations by the plaintiff's authorized agents as to the condition of the land, inducing the defendant to sign the contract, were neither a defence nor the basis of a cross action. The court said: "It is a fundamental principle of law that contracts in writing voluntarily executed with full knowledge of their contents by rational beings acting on their own judgment must be enforced"; and also: "The defendant relies on the proposition that fraud vitiates every contract. But there is a distinction between a fraud which

is antecedent to a contract, and fraud which enters into the making of the contract. The present case belongs to the former class" (page 174). The only cases cited are *Cannon* v. *Burrell*, hereinbefore discussed, and *McCoy* v. *Metropolitan Life Ins. Co.* 133 Mass. 82. The latter case, decided in 1882, merely held that the application for an insurance policy was part of the contract of insurance and that misrepresentations contained in it material to the risk were a defence to an action on the policy. The case of *Colonial Development Corp.* v. *Bragdon* has been frequently regarded as the leading authority for a distinction supposed to exist in this Commonwealth between "antecedent" fraud and "fraud which enters into the making of the contract." Neither kind of fraud is defined in the opinion, and no reason is given why a contract should be voidable if procured by fraud perpetrated at one time or in one manner and valid if procured by fraud perpetrated at another time or in another manner.

*Colonial Development Corp.* v. *Bragdon* has been followed in *O'Meara* v. *Smyth*, 243 Mass. 188, and in *Sullivan* v. *Roche*, 257 Mass. 166, 171 (this being the last case in which the supposed distinction has been made the precise ground of the decision). It has been cited with apparent approval in *International Textbook Co.* v. *Martin*, 221 Mass. 1, 7, *Eastern Advertising Co.* v. *E. L. Patch Co.* 235 Mass. 580, *Boss* v. *Greater Boston Mortgage Corp.* 251 Mass. 455, and *Eastern Advertising Co.* v. *Shapiro*, 263 Mass. 228, 232, although it would seem that the actual decisions in these cases could well have been rested, in so far as in truth they were not, upon the so called parol evidence rule. See *Glackin* v. *Bennett*, 226 Mass. 316, 319, 320. The *Colonial Development Corp.* case was accepted but distinguished in *Brown* v. *Grow*, 249 Mass. 495, 500, and, (without citing) in *Reinherz* v. *American Piano Co.* 254 Mass. 411, 421, 422 (where it is said that the words barring proof of fraudulent representations "must be explicit, have no folds, and be understood and intended by the parties unequivocally to effect such result"), and in *Hashem* v. *Massachusetts Security Corp.* 255 Mass. 29, 31.

In *Butler* v. *Prussian*, 252 Mass. 265, the defendant sold to the plaintiff an automobile truck under a written contract of conditional sale which contained this language: "Said car is leased as is and no reference, representation, contract, agreement, promise, undertaking or understanding whatever not contained therein shall be binding upon the lessor, or in any wise affect the validity of this contract or form any part thereof, but all statements made have been merced [*sic*] and set forth herein. I further agree that there are no collateral agreements nor understandings whatsoever modifying or affecting the terms of the within lease or my liabilities thereunder, and that there are no set-offs, counter-claims nor defenses thereto" (pages 267–268). When the truck had been shown to the plaintiff it contained a new motor and other new operating parts. Shortly thereafter old machinery was substituted, and the contract described by number and model the substituted parts. The court said: "Fraud which enters into the making of the contract, as distinguished from that which is antecedent to it, cannot be excluded from the reach of the law by any form of phrase inserted in the contract itself. Parties may stipulate by their contract that the statements inducing its execution are all included in its recitals and that no agent has authority to make any representations not therein contained. But they cannot by written words prevent the law from inquiry into, and granting redress for, fraud which enters into the very substance of the contract itself. This distinction was pointed out in *Colonial Development Corp.* v. *Bragdon*, 219 Mass. 170, 174" (page 268). After citing later cases hereinbefore discussed, the opinion adds: "While we do not depart from those decisions, we do not incline to extend them" (page 269). The court then held that there had been "a plain fraud as to the essence of the contract. There is no rule of law which prevents recovery for that wrong" (page 269). It is not easy to perceive a decisive distinction between the representation as to the character of the truck to be sold, implied by exhibiting the new machinery in *Butler* v. *Prussian* and the representation as to the character of the land to be sold

made by word of mouth in *Colonial Development Corp.* v.
*Bragdon,* nor is it easy to see how from a legal point of
view one went "to the essence of the contract" more than
the other.

The case of *Granlund* v. *Saraf,* 263 Mass. 76, was a suit
in equity by the buyer for rescission of his purchase of a
retail business induced by fraudulent representations as to
the amount of the gross receipts. By a document forming
part of the transaction the defendants had attempted to
provide that if after six months from the date of sale the
plaintiffs should find that one of the defendants had made
any misrepresentation, that defendant would take the store
back and refund the money, but only on certain specified
conditions. The court said, "It is a fundamental principle
of law, as it is of morals, public policy and fair dealing,
that a party cannot contract against liability for his own
fraud. Fraud which enters into the making of the contract
cannot be excluded from the reach of the law by any form
of phrase inserted in the contract itself. Parties cannot
by written words prevent the law from inquiring into and
granting relief for fraud in the substance of the contract.
*Butler* v. *Prussian,* 252 Mass. 265, 268. Many contracts
have been refused enforcement whereby a party has striven
to shield himself from the results of his fraudulent prac-
tices upon the other party. Such contracts, if given valid-
ity, would overcome the salutary maxim which pervades
the common law, that fraud vitiates every transaction at
the election of the injured party" (page 79). And again:
"Attempts under the form of contract to secure total or
partial immunity from liability for fraud are all under the
ban of the law. The extent of the relief granted to the
injured party, in order to be adequate and complete, can-
not be constricted by act of the parties. The nature of
fraud and the grounds upon which the law denounces it
are such that it cannot be made the subject of preliminary
or contemporaneous alleviating contract" (page 80). Re-
lief was granted to the plaintiffs without observance of the
conditions upon which rescission was to be limited by the
terms of the contract. Nevertheless the court distinguished

*Colonial Development Corp.* v. *Bragdon* "and similar decisions where parties, freely and without fraud or imposition, have made a written contract to the effect that all representations touching the subject matter of the contract are therein set forth; in such cases it has been held that the terms of the formal contract cannot be varied or contradicted by proof that there were other antecedent representations fraudulent in nature" (pages 80–81).

The case of *Florimond Realty Co. Inc.* v. *Waye,* 268 Mass. 475, was a suit for specific performance of a contract to purchase land. The salesman employed by the plaintiff had made false representations as to the character of the land. The contract contained a provision that all terms and representations were "embraced" in the contract and that "No representations, promises or agreements except as herein contained shall be binding on the parties hereto" (page 478). In holding that a court of equity would not grant specific performance of a contract thus tainted, the court said that the terms of the contract could not be invoked to prevent the court from examining all the circumstances in order to ascertain whether it would be conformable to good conscience to grant that relief. "No one can escape the equitable consequences of his fraudulent statements inducing a contract by inserting therein a clause of this nature. The principle on which *Colonial Development Corp.* v. *Bragdon,* 219 Mass. 170, and similar cases (see *Sullivan* v. *Roche,* 257 Mass. 166, 171, for collection of them,) rest, to the effect that a written contract freely and intelligently made, without misrepresentation as to its contents or execution, untainted by fraud as to its substance, providing that all inducing representations are therein set forth, is binding upon the parties, is confined within narrow limits, is not to be enlarged, and does not extend to specific performance on facts like those here disclosed" (pages 479–480). The court then calls attention to a number of cases to which reference is hereinafter made, which either in their tendency or by express statement are opposed to the doctrine of *Colonial Development Corp.* v. *Bragdon.*

Five months after the decision in *Florimond Realty Co. Inc.*

v. *Waye,* last above discussed, further significant language
was used. *Connelly* v. *Fellsway Motor Mart, Inc.* 270 Mass.
386, was an action at law for deceit by which the plaintiff
was induced to buy an automobile from the defendant by
a false representation made before the execution of the
contract that the automobile was a new one. The contract
provided that it embodied "all the terms and conditions of
sale," that the automobile was sold "as is, where is, and as
shown. No guarantee as to year of car." The court said
that the evidence did not warrant a finding of "fraud which
entered into the making of the contract as distinguished
from fraud which was antecedent thereto" (page 388).
Thereupon, treating the representation as "antecedent,"
the court discussed briefly *Colonial Development Corp.* v.
*Bragdon* and cases following it. The court then referred to
the parol evidence rule by which "all previous or contempo-
raneous oral discussion or written memoranda are assumed
to be rejected or merged in" a written contract, and said,
"It is this principle which has been held applicable in the
group of cases already cited and illustrated by *Colonial
Development Corp.* v. *Bragdon, supra,* although in them there
were also express agreements relating to representations.
These cases constitute no exception to the general rule that
fraud vitiates every contract at the election of the injured
party. It does not authorize parties to attempt to provide
by written contract that there shall be no liability for fraud"
(page 390). It was held, at least for the purposes of an action
of tort, that "the false representations were not merged in
the written agreement" (page 391), and a verdict for the
plaintiff was allowed to stand. Thus the court, in sub-
stance, stated that *Colonial Development Corp.* v. *Bragdon*
was merely an illustration of the parol evidence rule and
not the pronouncement of a distinct principle.

*Noack* v. *Standard Stores, Inc.* 281 Mass. 53, was also an
action of tort for deceit. The plaintiff had been induced
to buy stock from the defendant by fraudulent representa-
tions that the stock would be just like money in a bank or
lent on a mortgage and that she could get her money back
from the company any time she wanted it, and by other

false statements. The contracts of purchase provided that, "No condition, agreements or representations, written or verbal, other than those printed herein, shall be binding" (page 55). The court held that the representations made "were false representations respecting the identity of the property which the plaintiff was told she was purchasing. It is plain that this was a deliberate fraud respecting the contract itself, and entitles the plaintiff to the relief she seeks, notwithstanding the recital in the contract relied on by the defendant" (page 56). The opinion quotes from *Butler* v. *Prussian*, 252 Mass. 265, hereinbefore mentioned, and cites *Colonial Development Corp.* v. *Bragdon* and its companion case, *Sullivan* v. *Roche*, only to say that they "are distinguishable in their facts" (page 57). It is inconceivable that the court which in *Connelly* v. *Fellsway Motor Mart, Inc.* and in *Noack* v. *Standard Stores, Inc.* allowed the injured party to recover in an action of deceit for fraud would have held valid against him the contract of sale and purchase obtained through the same fraud.

There is, closely related to the cases we have here discussed, another class of cases wherein the parties have contracted that goods are bought "as is," thus purporting to cast upon the buyer by agreement all risk as to the condition of the goods. It would seem that if parties could bind themselves by contract against the effect of "antecedent" fraud an agreement of the kind described ought to be as effective to that end as an agreement that no representations have been made. Yet the issue of fraud has been held to be open in these cases. *Reinherz* v. *American Piano Co.* 254 Mass. 411, 421, 422, 423. *Connelly* v. *Fellsway Motor Mart, Inc.* 270 Mass. 386, 390, 391. *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 182.

We have reviewed the decisions of this court at unusual length because, although it cannot be said that *Colonial Development Corp.* v. *Bragdon* has been expressly overruled, it is impossible to avoid the impression that the later decisions, several of them written by the same eminent chief justice who wrote the opinion in that case, have disclosed

a reluctance to apply the distinction there announced between "fraud which is antecedent to a contract, and fraud which enters into the making of the contract," and in some of these cases language has been used, reaching as it would seem beyond the immediate necessity of the case, and exceedingly difficult to reconcile with the existence of such a distinction. Some of the actual decisions are likewise difficult to reconcile with it. At least we may say that we are not now precluded by settled authority from reconsideration of the matter.

The distinction announced in *Colonial Development Corp.* v. *Bragdon* has met with a generally unfavorable reception in the courts of other jurisdictions and by commentators.[1] As far as we have been able to ascertain that case has been cited eight times in reported decisions outside this Commonwealth, and the distinction was finally approved only once.[2] Professor Williston says that it is "not to be supported." Williston on Contracts (Rev. Ed.) § 811A, § 811. (See also Wigmore on Evidence [3d ed.] § 2439.) It is inconsistent with Am. Law Inst. Restatement: Contracts, § 573, and Am. Law Inst. Restatement: Agency, § 260 (2) (see comments b and c). It is opposed to the great weight of authority.[3] It is

---

[1] 8 B. U. Law Rev. 57. 10 Id. 446. 6 Brooklyn Law Rev. 450, 451. 32 Ill. Law Rev. 944. 75 Univ. of Pa. Law Rev. 281. See 25 Col. Law Rev. 231; 20 Cornell Law Quarterly, 91; 32 Mich. Law Rev. 1004. Compare, however, 22 Cornell Law Quarterly, 103.

[2] *Advance-Rumely Thresher Co. Inc.* v. *Jacobs,* 51 Idaho, 160, 167–169. *Angerosa* v. *White Co.* 248 App. Div. (N. Y.) 425, affirmed, 275 N. Y. 524. *Sharkey* v. *Burlingame Co.* 131 Ore. 185, 203–207. *Land Finance Corp.* v. *Sherwin Electric Co.* 102 Vt. 73, 79–80. *Baylies* v. *Vanden Boom,* 40 Wyo. 411, 429–433. *Jones* v. *Bankers' Trust Co.* 235 Fed. 649; *S. C.* 239 Fed. 770, (at first approved, but upon rehearing disapproved). *Arnold* v. *National Aniline & Chemical Co. Inc.* 20 Fed. (2d) 364, 369–370 (an instructive discussion). *Barnebey* v. *Barron G. Collier, Inc.* 65 Fed. (2d) 864, 867 (approved).

[3] See cases collected in 10 Am. L. R. 1472; 56 Am. L. R. 56 *et seq.;* 75 Am. L. R. 1032; and 127 Am. L. R. 132. In addition to cases previously cited, the following are illustrative: *Abercrombie* v. *Martin & Hoyt Co.* 227 Ala. 510, 512; *Speck* v. *Wylie,* 1 Cal. (2d) 625; *Callahan* v. *Jursek,* 100 Conn. 490, 496; *Plate* v. *Detroit Fidelity & Surety Co.* 229 Mich. 482, 487; *Ganley Brothers, Inc.* v. *Butler Brothers Building Co.* 170 Minn. 373, 375; *Nash Mississippi Valley Motor Co.* v. *Childress,* 156 Miss. 157, 162; *Stroman* v. *Atlas Refining Corp.* 112 Neb. 187, 189, 190; *Guilder* v. *Boonton-Pine Brook-New York Bus Co.* 110 N. J. L. 103, 105–106; *Bridger* v. *Goldsmith,* 143 N. Y. 424; *White Sewing Machine Co.* v. *Bullock,* 161 N. C. 1; *Dieterich* v. *Rice,* 115 Wash. 365; *Shepard* v. *Pabst,* 149 Wis. 35, 47; *Strand* v. *Griffith,* 97 Fed. 854, 857, 858; *S. Pearson & Son, Ltd.* v. *Dublin Corp.* [1907] A. C. 351.

difficult to reconcile with our own decision in *Reagan* v. *Union Mutual Life Ins. Co.* 189 Mass. 555. And see *Kilkus* v. *Shakman*, 254 Mass. 274, 279.

As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law.

For the reasons set forth we conclude that the distinction stated in *Colonial Development Corp.* v. *Bragdon*, 219 Mass. 170, 174, and repeated in the later cases hereinbefore mentioned, between "fraud which is antecedent to a contract" and "fraud which enters into the making of the contract" cannot be maintained, and that contracts or clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown, whether that fraud was "antecedent" to the contract or "entered into the making" of it. In the words of *Granlund* v. *Saraf*,

263 Mass. 76, at page 80, "Attempts under the form of contract to secure total or partial immunity from liability for fraud are all under the ban of the law."

This decision deals with fraud and its consequences. Nothing we have said limits or alters the effect of the parol evidence rule. That rule does not stand in the way of rescission for fraud. *Weeks* v. *Currier,* 172 Mass. 53, 55. *Busiere* v. *Reilly,* 189 Mass. 518, 520. *Harris* v. *Delco Products, Inc.* 305 Mass. 362, 364.

In the case before us the parties dealt directly with each other. No representations were made through an agent. Frequently a principal provides his agents with a form of contract containing clauses designed to limit the authority of his agents to make alterations in the form furnished or to make agreements or representations not contained in the form itself. Such a clause appears in *Colonial Development Corp.* v. *Bragdon* and in some of the other cases hereinbefore discussed. This decision does not touch upon the effect of such clauses as notice to a person dealing with the agent of limitations upon the agent's authority, or in the absence of fraud in procuring assent to such clauses, as limiting by contract the authority of the agent. But whatever effect such clauses may normally have as a protection to the principal it would seem that they should not enable him to enforce for his own benefit a contract procured through the actual fraudulent misrepresentation of his agent, whether that fraud is "antecedent" to the contract or "enters into the making" of it. If the principal insists upon the contract he must take it with the defect which his agent has implanted in it. *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1, 3, 4. *Tremont Trust Co.* v. *Noyes,* 246 Mass. 197, 207, 208. *Quincy Trust Co.* v. *Woodbury,* 299 Mass. 565, 568. Williston on Contracts (Rev. Ed.) § 811A (page 2283). Am. Law Inst. Restatement: Agency, §§ 260 (2), 298, 308.

Nothing herein said affects any evidential value of exculpatory clauses or agreements as tending to show that no extraneous representations were in fact made, or if made that they were not relied upon.

Inasmuch as in this case there was evidence for the jury that, notwithstanding the terms of the "confirmation slip," the sale of the stock was induced by a fraudulent representation of the defendants, the verdict of the jury must stand.

*Exceptions overruled.*