Pettingell, P. J.
Action of contract or tort brought originally in two counts, the first sounding in contract on an express promise and the second sounding in tort for deceit. After trial the plaintiff was allowed to ¡amend his declaration by adding a third count upon which the court made a finding for the plaintiff. The defendant’s answer is a general denial.
The third connt is as follows:
“And the plaintiff says that on or about March 31st, 1945 he entered into a contract with the defendant whereby the defendant sold to him a horse for which the plaintiff paid him the sum of $50 in cash and turned over to the defendant the plaintiff’s own horse of the value of $125.
“And the plaintiff further says that the plaintiff warranted the said horse to be fit for the purpose of farm work; that the defendant well knew' that the plaintiff desired to purchase a horse for the purpose of using him on bis farm; that relying upon the ¡skill, judgment and ability of the defendant and upon the representations1 made by the defendant to the plaintiff *16 that the said horse was fit for farm, work, the plaintiff did purchase from the- defendant a chestnut mare; that the said chestnut mar-e- w-as unfit for farm purposes in that it was sick and unable to do the farm work for which the plaintiff intended to use it, all of which was or could have been known to the defendant; wherefore the plaintiff say.-s that the- defendant owes- him -the sum of $175.”
It -does not allege that notice of -a breach of warranty was given by the plaintiff within a reasonable time.
'The trial judge made an extended finding -of facts which is- -set forth herein and 'contains the material evidence. The report, however, does not state that it contains- all the evidence material to the questions reported. The plaintiff requested five rulings, as follows:
“1. The evidence is sufficient to warrant a finding for the plaintiff. 2. The evidence is sufficient to warrant a finding that the defendant expressly warranted the horse to be sound in every respect and a clever worker. 3. The evidence is sufficient to warrant a finding that the horse was not sound and that it had a disease known as a shipping disease or influenza, and that the said horse was not a good worker. 4. The evidence is- sufficient to warrant -a finding that the defendant knew that the said horse was sick -and- not a good worker. 5. The evidence is -sufficient to warrant a finding that the defendant violated General Laws, Chapter 272, Section 78, in selling to the plaintiff a sick and diseased horse.”
The trial judge allowed 1, 2, 3, and 4 of these and denied 5.
The defendant requested fifteen rulings, as follows:
“1. That the evidence is insufficient to warrant a finding for plaintiff on Counts 1 and 2 of his declaration. 2. That -the evidence is- insufficient to warrant a- finding for the plaintiff on Count 3 of his declaration. 3. That the evidence isl sufficient to warrant a finding for the defendant on Counts 1 and 2 of the plaintiff’s -declaration. 4. That the evidence is- sufficient to warrant a finding f-o-r the -defendant -on Count 3 -of the *17 plaintiff’s declaration. 5. That on -all the. law the evidence and the pleadings the plaintiff is not entitled to recover. 6. In order for the plaintiff to he- entitled to rescission, he must have notified the defendant within a reasonable time of his election to rescind, and must have returned,' or have offered .to- return the horse purchased from the defendant in substantially as good condition as it was when transferred to him. (Skillings v. Collins, 224 Mass. at 277.) 7. A statement purporting to be a statement of the .seller’s opinion -cannot he construed as a warranty. (G. L. Ch. 106, Section 14.) 8. The oral statements of warranty introduced before the written agreement was- in ¡evidence -cannot be considered by the Court and should be stricken out. (Glackin v. Bennett, 226 Mass. 316.) 9. If the plaintiff has examined the hors-e there is no implied warranty as regards defects which such an examination ought to have revealed. (G. L. Ch. 106, See. 17.) 10. Extrinsic evidence e-v-en though admitted cannot control words of -a document purporting to -express the whole transaction. (Kerwin v. Donaghy, 59 N. E. 2nd 299 (1945.) 11. The burden is on the plaintiff to prove that the condition complained of existed at the time of the sale. 12. That the warranty ended by failure- to notify seller after acceptance at a reasonable time after buyer knew or -ought to have known that the warranty was broken. (Stein v. Almeder, 253 Mass. 200.) 13. That the evidence is lacking in- -elements of -deceit such as is necessary to -sustain an action of tort for deceit. 14. That -the plaintiff failed to introduce such evidence of value- necessary to- support the measure of damages on the- first count -of his declaration. 15. That the plaintiff failed to introduce such- evidence of value necessary to ¡support the measure of damages on the third count of the- plaintiff’s- declaration.”
The trial judge allowed requests 3, 4, 7, 11 and 13; refused 1, 2, 8, 14, and 15 ; refused 5, -as not -conformable to the rules, refused 6, 9,10 and 12, as- immaterial; and f-ound for the plaintiff for $50. He found the- following facts:
£< Plaintiff is a farmer and defendant is ia dealer in horses. On March 31,1945- plaintiff went to the -defend *18 ant’s place of business to buy a horse. Defendant knew from a previous interview with the plaintiff that the latter was looking for a horse to¡ use on his farm. Plaintiff had told defendant that the horse he already had was 1 too fast’ for farm work; that he wanted a slow horse and a small one. Defendant produced two- -small horses from a number that he had on hand, and told plaintiff that either would be the kind of horse he wanted — -that they would "suit his- purpose. Plaintiff chose -one ¡of these horses, and at the defendant’s suggestion looked at the horse’s month and teeth and examined the animal to see -if its ‘stomach was sunk in’ and ‘if -its muscles showed that it was a work horse.’ Defendant offered to sell the horse for the plaintiff’s horse and $50.00 to boot. Plaintiff agreed to this on ¡condition that defendant would guarantee that the horse sold had ‘no wind’ — that is, free of ‘heaves’— and was a clever worker which means a horse that does not ‘make trouble’, is easily handled, 'and used to management; and further stipulated that the defendant should deliver the horse at plaintiff’s farm, and there allow it to be hitched to a plow and tried out to siee if it would work ¡satisfactorily. Defendant agreed to these terms, and gave the plaintiff a writing as follows :
“ ‘March 31,1945. William Mikulsky, Billerica. Exchange chestnut fresh mare for a hay horse. Bec’d $50. No wind. Works clever. Paid in full.
B. PLOUFFE.’
“In this writing the ‘chestnut mare’ refers to plaintiff’s horse; and the ‘hay horse’ to the horse sold -by the defendant.
“Plaintiff paid $20 ¡on receipt of this paper and at half past three on the same day defendant delivered the horse to the plaintiff’s farm where plaintiff hitched it to a plow, ran a furrow, accepted the- horse, paid the defendant $30 more and delivered his horse to the defendant, all in accordance with the above' understanding.
“At the time of sale, the horse sold by defendant ■conformed to the specific warranties made by the defendant that is to -say was without heaves and was a ‘clever worker.’ However, it was in the incipient *19 stages of a disease known as ‘ shipping fever ’ or equine influenza. Neither plaintiff nor defendant knew this and'there was nothing in the appearance of the horse to -indicate it until the evening of March 31st when the plaintiff discovered that the horse would not set that night, nor on the next day which was a Sunday. On Monday, April 2nd, the plaintiff called a, veterinary who treated the animal on that day and on the following Wednesday, at which time improvement was noted, and its recovery expected. This did not turn out to be the case, however, for the horse became worse and on Saturday, April 7th the plaintiff called a, second veterinary who also- gave it -treatment, notwithstanding which the horse developed pneumonia and died on April 11th,
“About a week .after the sale, plaintiff' notified the defendant that the horse was sick and -said ‘take him back, I don’t want him’, but defendant refused to do so.
“ 1 Shipping fever’ is caused by an unfilter able virus communicated from one horse to- another. It appears where a number of horses are kept together, as in rail •shipments. The horses here in question had been received by defendant as part of a shipment of about 15 horses, just prior to the sale. Shipping fever turns into pneumonia and is fatal in one case out of ten on the average. The usual result is- recovery. The- fatal result in the present ease is attributable to -the lack of suitable resistance to the infection, due to- the horse’s subnormal physical condition.
“On the foregoing facts, I find that the defendant impliedly warranted that this horse was- reasonably fit for the purpose to which- the plaintiff intended to use it, to wit; work on his farm; that the plaintiff-made thi-s known to defendant, and relied on the defendant’s judgment; that the horse was not in fact reasonably fit for such purpose, and that the- difference- between the value of the horse at the time of delivery, and the value it would have had if answering to- the warranty is- fifty dollars.
“I find for the plaintiff in the -sum of Fifty ($50100) Dollars on the third count of the- declaration.” .
The plaintiff sued on two counts, one- in contract on an express promise, and the other in tort, for deceit. .The trial *20 judge held that there could be no recovery on either of the counts in the original 'declaration; a third count was filed, on a warranty, by amendment.
The evidence showed that after there had been talk about ■the horse and the purpose for which she was- needed, the plaintiff said he would take the horse if the defendant would guarantee that she was free from heaves and a good worker. The defendant signed a paper which the parties agree meant just that.
That paper says1 nothing of those things about the horse which had been talked over before- the paper was signed. The question immediately arises whether under the rule of Glackin v. Bennett, 226 Mass. 316, the plaintiff could recover on anything not in the written guarantee.
In that case the plaintiff purchased 'an- automobile, the defendants orally guaranteeing* the mileage of the car. Before the trade was completed the defendants gave the plaintiff a written guarantee ‘ ‘as to- parts -same- as with a, new car. ’ ’ It was held that the plaintiff could recover only on a breach of the written guarantee, and not on any earlier oral guarantee.
In Glackin v. Bennett, at pages 319, and 320, the court said,
“But where a writing shows on its- face that it includes the whole agreement of the parties and comprises all that is necessary to constitute a contract; it is presumed that they have placed the terms of their bargain in this form to prevent misunderstanding and dispute intending it to ¡be a complete and final statement of the whole transaction. And all their stipulations relating to its subject matter are to be found within the written instrument.
“Even though previous oral conversations would be enough in themselves to establish an oral contract the ■parties may, nevertheless, by mutual understanding postpone the culmination of their negotiations into a contract to the later preparation and delivery of a *21 written instrument. It is immaterial that the plaintiff did not sign the ‘confirmation slip.’ ” Bates v. Southgate, 308 Mass. 170, at 172.
Even if such oral testimony is admitted and gets into the case, it cannot affect the result, if there is a written agreement in evidence-.
“The rule forbidding the introduction of paroi testimony to vary -or contradict a written -agreement is not merely one of evidence, though commonly -so •spoken of, but one of substantive law, and rests on the doctrine that when parties have deliberately put their agreements in the form of a written contract, they shall not be allowed to show that their agreement was something else.” Glackin v. Bennett, 226 Mass. 316, at 320.
To the same effect is Spevack v. Budish, 238 Mass. 215, at 217, as follows:
“The evidence admitted without objection could not modify or control- the terms of the contract. It is a rule of substantive law that when a written contract is made, it fixes the rights of the parties and cannot be varied by antecedent negotiation or contemporaneous qualification.”
“Extrinsic evidence, even though admitted, cannot control the words of a -document that purports to express the whole transaction-.” Kerwin v. Donaghy, 317 Mass. 559. Mears v. Smith, 199 Mass. 319, at 322. O’Malley v. Grady, 222 Mass. 202, at 204. Queenin v. Blank, 268 Mass. 432 at 435.
In view of Glackin v. Bennett, supra, and the rule of law which it sets forth, there was prejudicial error in the- refusai of the eighth and tenth requests for rulings.
The finding for the plaintiff is to be vacated and the case is to .stand for a new trial.
There was also a finding of lengthy pain and suffering; •that prior to the accident his earnings had averaged $30.00 per week and had incurred medical expenses of $642.00.