van Gestel, J.
This matter is before the Court on the motion filed by defendants John T. Killian (“Killian”) and KR Corporate Services (“KR”) to dismiss plaintiffs’ complaint for equitable relief and money damages. The underlying complaint alleges fraud and breach of fiduciary duty in connection with KR’s purchase of plaintiffs’ holdings in Phoenix Corporate Services, LLC (“PCS”). Defendants contend that plaintiffs’ action is barred by a written disclaimer in the assignment agreement negotiated and signed by the parties.
For the following reasons, defendants’ motion is ALLOWED.

BACKGROUND

PCS, a Massachusetts corporate facilities management company, was formed in December 1996 and governed by an operating agreement dated January 1, 1997. From 1997 until the spring of 1999, plaintiffs Stanley J. Harrelson (“Harrelson”) and John A. Goodman (“Goodman") each held a minority 10% interest in PCS. Defendant Killian, who served as the Chief Executive Officer of PCS, was also the Chief Executive Officer and majority shareholder of KR, which held a 25% interest in PCS. Phoenix Realty Advisers (“PRA”), a Delaware corporation, initially owned a majority 55% interest in PCS.
In the fall of 1998, PRA abandoned its plan to create a Real Estate Investment Trust with PCS and other companies, and sold its 55% interest in PCS to Killian. Despite requests from Harrelson and Goodman, Killian refused to disclose the terms of his purchase of PRA’s interest. At the same time, Killian, on behalf of KR, made a verbal offer to acquire Harrelson’s and Goodman’s membership interests in PCS. Killian represented to Harrelson and Goodman that he wanted to acquire their membership interests in order to consolidate his ownership and control of PCS for the purpose of long-term investment.
In the spring of 1999, after protracted negotiations, Harrelson and Goodman executed an Agreement to sell and assign their respective 10% interests in PCS, along with various PCS promissory notes, to KR for $875,000. Section 3 of the Agreement contained a *609 provision in which the parties acknowledged and agreed to certain mutual disclaimers. The disclaimers stated that the parties were “sophisticated investors” who possessed “adequate information concerning the business and financial condition of the Company to make an informed decision” regarding the sale and assignment; that every party, independently and without reliance upon any other person, made his own “individual analysis and decision” to enter into the Agreement; that neither Harrelson and Goodman nor Killian and KR made any express or implied representations or warranties with respect to the transactions at issue; that the conveyance was “irrevocable and without recourse”; that either side might possess “material information unknown to the other side,” including confidential information; and that neither side would be held liable with réspect to the nondisclosure of such information.
Section 4.2 of the Agreement contained a representation that KR was acquiring Harrelson’s and Goodman’s membership interests in PCS for “investment,” and that the acquisition was not in connection with any “present or contemplated agreement, undertaking, arrangement, obligation, indebtedness or commitment” to sell the membership interests.
By July 1, 1999, approximately two months after purchasing Harrelson’s and Goodman’s interests, KR sold the assets of PCS to Trammell Crow Company (“Trammell Crow”). Harrelson and Goodman then brought this action, alleging that they were injured by selling their interests in PCS for less than they would have received had they known about and participated in the sale to Trammell Crow. KR Corp. argues that Harrelson’s and Goodman’s claims are barred by the mutual disclaimer clauses in the Agreement.

DISCUSSION

Pursuant to Mass.R.Civ.P. 12(b)(6), a court must dismiss a complaint for failure to state a claim where “it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Blank v. Chelmsford OB/GYN, P.C., 420 Mass. 404, 407 (1995), quoting Nader v. Citron, 372 Mass. 96, 98 (1977). The Court must accept as true the well-pleaded factual allegations of the complaint, as well as any inferences that can be drawn therefrom in the plaintiffs favor. Eyal v. The Helen Broadcasting Company, 411 Mass. 426, 429 (1991). A plaintiff will not prevail over a motion to dismiss only if “it appears with certainty that he is entitled to no relief under any combination of facts that could be proved in support of his claim.” Id. at 322 (emphasis in the original). Here, therefore, the Court must determine whether, given the terms of the mutual disclaimer clauses in the Agreement, there is any set of facts under which these plaintiffs might be entitled .to relief under the claims set forth in their complaint. Generally, courts will not permit a fraud claim based on prior or contemporaneous oral representations as to specific terms that are inconsistent with the clear and unambiguous written terms of a contract. See McMartin v. Westlake, 36 Mass.App.Ct. 221 (1994). It is also true, however, that “clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown.” Bates v. Southgate, 308 Mass. 170, 182 (1941). Where, therefore, a party uses misrepresentations to induce another person to enter into a contract, a disclaimer clause “does not insulate automatically” that party from liability. Id. As the court explained;
In the realm of fact it is entirely possible for a party knowingly to agree that no misrepresentations have been made to him, while at the same time believing and relying upon misrepresentations which in fact have been made and in fact are false but for which he would not have made the agreement.
Id. Here, Harrelson and Goodman argue that the written disclaimer should not be binding on them because the disclaimer itself was based on the fraudulent misrepresentation that Killian and KR wanted to acquire Harrelson’s and Goodman’s shares in PCS only as an investment. That argument is not supported by the clear language of the disclaimer clauses.
In Bates, supra, an investment broker, Bates, sought to recover the purchase price he had paid defendant brokers Southgate and Company for five hundred shares of stock in a gypsum company. Bates alleged that he was induced to purchase the stock by Southgate’s representation that the company had received an order for forty thousand tons of gypsum, with an anticipated profit of about $2.66 a ton.[3] Southgate sent Bates a confirmation slip, at the bottom of which was printed, in pertinent part: “It is agreed between broker and customer . . . that in making this transaction, we make no representation other than to identify the security and state the price.”
The court held that Southgate’s alleged misrepresentation could have been material as an inducement to buy the stock, and that the disclaimer clause was not a defense because Bates’s acceptance of the disclaimer clause might also have resulted from Southgate’s fraudulent misrepresentation. The court noted that parties may accept, “without critical examination . . . agreements containing somewhere within their four corners exculpatory clauses in one form or another,” but do so “in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business.” Bates, supra, 308 Mass. at 182. Under the facts in Bates, the court held that Southgate could not contract against liability for its own fraud. Id. at 177.
*610 Bates recognized, however, that “a balance must be struck between two competing values: contractual certainty and protecting innocent parties from fraud.” Turner v. Johnson & Johnson, 809 F.2d 90, 96 (1st Cir. 1986). Because the facts in this case are distinguishable from those in Bates, a different balance must be struck. Here, the disclaimer is not a standard portion of a printed form prepared by one of the parties, but rather a mutual agreement negotiated by the parties. Harrelson and Goodman, with the assistance of counsel, carefully crafted their portion of the disclaimer, specifying that they were “sophisticated investors” with “adequate information concerning the business and financial condition of the Company to make an informed decision”; that they had made their decision regarding the sale and assignment based on their own “individual analysis and decision” and without reliance upon Killian, KR Corp., PCS or any other person; that the sale was “irrevocable and without recourse”; and that Harrelson and Goodman were aware that Killian and KR Corp. might possess “material information” not known to Harrelson and Goodman, including confidential information, and would not be held liable for the non-disclosure of such information.
Thus, the disclaimer in this case explicitly states that Harrelson and Goodman based their decision to sell their interests in PCS on their own independent financial analysis. In contrast, the disclaimer in Bates contained no assertion that Bates had made any independent evaluation of the proposed transaction. This is not, therefore, the type of situation described in Bates, in which one party merely accepts representations made by the other, then signs a disclaimer clause in reliance on those representations. In this case, the disclaimer clearly expressed the parties’ intent that each side assume full responsibility for its own independent analysis of the proposed transaction.
After reviewing PCS’s financial situation, Harrelson and Goodman made an informed business decision to sell their interests in the company. The fact that that decision turned out to be less profitable than they had hoped does not invalidate the fact that they had agreed, based on their own independent analysis, to be bound by the sale. Harrelson and Goodman understood that Killian wanted to acquire their interests in PCS for investment purposes; that understanding necessarily implies Killian’s intent to sell at some time in the future. If Harrelson and Goodman wanted an assurance that a sale of PCS would not take place within a specified time period, and that assurance was essential to their decision to proceed with the sale, they could certainly have included such a provision in the Agreement.
Harrelson and Goodman argue that Sec. 4.2 of the Agreement supports their contention that Killian and KR Corp.’s intent to hold their interests for future investment was in fact part of the Agreement. There is no evidence, however, to indicate that the parties intended Sec. 4.2 to be anything other than a standard “investment intent” clause. Such a clause is often inserted into stock purchase agreements to exempt a private seller of securities from the registration requirements of the Securities Act of 1933.[4] Where there is no evidence that Sec. 4.2 was intended to serve as a guarantee that KR would hold Harrelson’s and Goodman’s shares for any specified period of time, it may not be interpreted as such.
In this case, therefore, there is no indication that the disclaimer clause in the Agreement was anything other than a valid contractual agreement between the parties. There is nothing in the evidence “that shows or even suggests that the integrity of the bargaining process was tainted by illegality, fraud [or] duress . . .” Sound Techniques, Inc. v. Hoffman, Appeals Court No. 98-P-1316 (November 3, 2000). As in Sound Techniques, this was not a contract of adhesion; there is nothing to suggest that the parties’ bargaining powers were unequal; and plaintiffs were represented by counsel throughout the negotiation process. Id. Harrelson and Goodman were experienced investors who signed a mutual disclaimer accepting full responsibility for their decision to sell their interests in PCS. The fact that their assessment apparently underestimated the market value of PCS does not alter the validity of that disclaimer.
Plaintiffs also argue that Killian, as the majority stockholder in a closely held corporation, owed them a fiduciary duty of full disclosure (see Donahue v. Rodd Electrotype of New England, Inc., 367 Mass. 578, 593 [1975]), and that the disclaimer is therefore ineffective unless plaintiffs, in executing the release, “had knowledge of all relevant facts that the fiduciary knew or ought to have known.” Allen v. Moushegian, 320 Mass. 746, 757 (1947). This argument also is barred by the specificity of the disclaimer, in which Harrelson and Goodman assumed all responsibility for their decision to sell their interests in PCS, and explicitly relieved defendants of liability for any failure to disclose confidential information.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendants’ motion to dismiss is ALLOWED.

Although Southgate denied making such a representation, it acknowledged that it was aware that the gypsum company had received no such order.

See Carl W. Schneider, Private Resales of Restricted or Control Securities, 49 Ohio St. L.J. 502, 510 (1988) (to ensure that seller of private securities who is not issuer, underwriter or dealer remains exempt from registration requirements, seller should extract from purchaser some form of “investment” representation).