**In re Wesley B. EDMOND, Debtor.**

**Virgil Ray NEELY and Inez Neely, Plaintiffs,**

v.

**Wesley B. EDMOND, Defendant.**

Bankruptcy No. 79–02229.

Adversary No. 80–0026.

United States Bankruptcy Court, W. D. Oklahoma.

July 2, 1980.

Stephen Livshee, Midwest City, Okl., for plaintiffs, Virgil Ray Neely and Inez Neely.

Archibald B. Hill, Oklahoma City, Okl., for defendant, Wesley B. Edmond.

## OPINION OF THE COURT

*Statement of the Case*

ROBERT L. BERRY, Bankruptcy Judge.

Plaintiffs, schedules creditors of the debtor herein, have filed an objection to the discharge of their debt in bankruptcy. Plaintiffs allege that their debt is excepted from discharge under 11 U.S.C. § 523(a)(4) as being a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

*Facts*

On or about August 24, 1978, Wesley B. Edmond (Edmond), as Vice President of Wesco General Contractors, Inc. (Wesco), entered into a written contract with Ray Neely (Neely), Plaintiff herein, for the construction of a home. Wesco was obligated under the contract to "furnish all materials and perform all labor necessary" to complete the structure.

The contract provided for payments by Neely in the total amount of $40,000.00 as follows:

1. $5,000.00 upon the signing of the contract,
2. $20,000.00 not later than thirty days from the signing of the contract,
3. $7,000.00 upon completion of the roof, and
4. $8,000.00 upon completion of the job.

Neely and his wife testified that Wesco was recommended to them by a local real estate broker. They also testified that all their dealings and negotiations were with Edmond.

Edmond testified that he was the sole stockholder in Wesco, and when the other incorporators disassociated themselves from Wesco, Edmond assumed the presidency of the corporation. Edmond's testimony also showed that he, personally, bought materials, dealt with subcontractors, wrote checks on the corporation's accounts, paid workers, made bank loans to finance projects giving his personal guarantee, and otherwise actively managed the corporation in its daily affairs.

Neely introduced six checks into evidence, totalling $33,500.00, as follows:

| Exhibit No. | Date | Amount |
|---|---|---|
| 2 | 08–24–78 | $ 5,000.00 |
| 3 | 10–06–78 | $ 1,500.00 |
| 4 | 10–10–78 | $20,000.00 |
| 5 | 11–16–78 | $ 2,900.00 |
| 6 | 11–21–78 | $ 1,100.00 |
| 7 | 11–21–78 | $ 3,000.00 |

Exhibits two through six appeared to be personal checks and bore the signature "Mrs. Ray Neely". Exhibit seven was issued by the Tinker Credit Union of Oklahoma City, Oklahoma, and indicated it was in payment for a "Contract for Virgil R. Neely".

Exhibit five was made payable to "Cash", exhibit three to Edmond and the other four to Wesco. All checks but exhibit five bore an endorsement indicating either Wesco, Edmond or both. Edmond testified that he did receive the proceeds of exhibit five, but that they were used to pay expenses on the project.

Edmond failed to produce any of his business records pertaining to the matters in question. He testified that his office had been "burglarized" and all of his business and corporate records stolen. He also testified that he did not report this to police authorities but did notify his landlord. Edmond stated that he did not notify police because he thought his landlord would do so.

Plaintiff introduced numerous bank records of the Crossroads State Bank of Oklahoma City, Oklahoma, where Wesco maintained an account. Among these records was a deposit slip for the Wesco account, dated 10–11–78, one day after exhibit four was dated. Under the column marked "CHECKS AS FOLLOWS" the deposit slip bore the following:

| | |
|---|---|
| "Neely | 20,000.00 |
| "Less 2418 # 24050 # 30070 | 14,124.28 |
| "Total | 5,875.72" |

Edmond's testimony indicated that the above-referenced items # 24050 and # 30070 were two notes at the Crossroads Bank which he paid.

The evidence also showed that Edmond failed to complete construction of the house and that three mechanic's or materialman's liens were subsequently filed against the property as follows:

1. Lien dated 2–2–79 in favor of Crutcho Lumber Company of Oklahoma City, Oklahoma, for material last supplied to Wesco on 11–22–78 for use in the Neely construction in the amount of $4,022.09.

2. Lien dated 3–28–79 in favor of Suburban Cabinet Shop of Oklahoma City, Oklahoma, for material and labor on the Neely construction in the amount of $1,612.83. An invoice attached to the lien statement bore the name "Wesco Gen Cont. Inc".

3. Lien dated 2–12–79, in favor of Builders Products Co., Inc., of Broken Arrow, Oklahoma, for material supplied on 11–27–78 to Wesco for use in the Neely construction in the amount of $1,341.79.

These liens were eventually paid by Neely. In addition, a lawsuit was filed against Neely by Crutcho Lumber Company resulting in a further expense to Neely of $800.00 in attorney's fees.

According to Neely's testimony, when Wesco ceased construction of the house, Neely "took over" construction of the house himself and commenced work on or about January 21, 1979. As evidenced by loan documents from the Equity Mortgage Company of Blackwell, Oklahoma, Neely borrowed $25,000.00 to complete construction and satisfy the liens against the property.

### Conclusions of Law

The dischargeability of Plaintiff's claim is governed by 11 U.S.C. § 523 which provides in pertinent part:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

"(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;"

Oklahoma is one of several states that have enacted so-called Lien Trust Statutes. 42 O.S.1971 § 152 provides in pertinent part:

"(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract."

42 O.S. § 153 further provides:

"(1) Such trust funds shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.

"(2) If the party receiving any money under Section 152 shall be a corporation, such corporation and its managing officers shall be liable for the proper application of such trust funds."

In the case of *In re Romero*, 535 F.2d 618 (10th Cir. 1976), the court considered whether a New Mexico statute providing for the revocation or suspension of a contractor's license on grounds of "diversion of funds or property received for prosecution or completion of a specific contract", created a fiduciary relationship as set forth in section 17(a)(4) of the previous Bankruptcy Act from which 11 U.S.C. § 523(a)(4) is derived. The court found that such a fiduciary relationship was created.

More recently, the case of *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir. 1980), construed the same Oklahoma lien trust statutes involved herein. That court adopted the District Court's Memorandum Opinion rendered on appeal from the Bankruptcy Court, which found:

1. The trust created by the Oklahoma statute is not a trust *ex maleficio*. The trust res is clearly defined and the trustee is charged with affirmative duties in applying the trust funds. (see p. 374)

2. While created by statute and lacking a trust agreement executed by the parties, the trust is an express trust that effects a fiduciary relationship. (see p. 374)

3. In order to fall within the ambit of section 17(a)(4) a fiduciary relationship must have arisen before and not as a result of misappropriation of trust funds. The statutes make clear that these funds are to be held in trust even though there may be no beneficiary at the time they are received. Thus the trust and the consequent fiduciary duties come into being upon receipt of construction funds and not upon their later misappropriation. (see p. 375)

4. A holding of nondischargeability under section 17(a)(4) does not require a finding that the bankrupt intentionally diverted, stole, or misappropriated funds for his own use. (see p. 375)

5. There is no requirement that a misappropriation must be shown to have been intentional in order to be covered by section 17(a)(4). (see p. 376)

Thus, under the Oklahoma Lien Trust Statutes, there can be no doubt that Wesco stood in a fiduciary relationship with Neely. In addition, 42 O.S. § 153(2) extends liability for breach of that fiduciary relationship to "managing officers" of corporate contractors. In *Black v. O'Haver*, 567 F.2d 361 (10th Cir. 1977), the court held that where an officer of a corporate builder bought materials, dealt with subcontractors, wrote checks on the corporate account, occasionally signed payroll checks, made bank loans to finance construction and took an active role in the day-to-day affairs of the corporation, he was a "managing officer" within the meaning of 42 O.S. § 153 and, as such, personally liable for misappropriation of trust funds.

According to Edmond's own testimony he, too, performed all of the aforementioned acts in behalf of Wesco. He also stated that he gave his personal guarantee on several bank loans used to finance construction projects. He, therefore, is personally liable for any "defalcation" in the application of trust funds received from Neely.

There is also no doubt that there was a "defalcation" in the application of the Neely trust funds. In the case of *In re Herbst*, D.C., 22 F.Supp. 353, the court, referring to § 17 of the former Bankruptcy Act, defined "defalcation" as follows:

"  .  .  . As used in this statute, "defalcation" means the failure of one who has received moneys in trust to pay it over as he ought. It is a broader word than fraud, embezzlement, or misappropriation, and covers cases where there was no fraud, embezzlement, or willful misappropriation on the part of the bankrupt.  .  .  . "

42 O.S. § 153 is clear in its requirement that no trusts funds "shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid." It is also clear that at least $6,976.71 in lienable claims were not paid by Edmond or Wesco. Moreover, Edmond testified that he used some $14,000.00 received from Neely to pay notes at the Crossroads Bank. This Court must therefore conclude that, under the Oklahoma lien trust statutes, Edmond is liable to Neely in the amount of $6,976.71. Furthermore, since Edmond's failure to pay these lien claims constitutes a defalcation while acting in a fiduciary capacity, the indebtedness arising directly therefrom is nondischargeable in bankruptcy.

An additional consideration is the fact that suit was brought against Neely by one of the lien creditors thereby causing Neely to incur $800.00 in legal fees. Since this amount is also a direct result of Edmond's defalcation, it is likewise nondischargeable in bankruptcy.

As to the remainder of Plaintiff's claim, there has not been sufficient evidence presented to show that Edmond's failure to complete the construction as agreed was "fraudulent." No fraud has been shown in the making of the contract. Neither has there been proof that at the time Edmond accepted the payments he had no intention of performing under the contract. This Court must therefore conclude that Plaintiff's remaining claims would be dischargeable in bankruptcy as being merely damages for breach of contract.

In conclusion, after a thorough consideration of the evidence presented and applicable legal authorities cited, it is the opinion of this Court that:

1.  Plaintiff should recover judgment in the amount of $7,776.71,

2.  This judgment amount represents a debt for defalcation while acting in a fiduciary capacity and, as such, is nondischargeable in bankruptcy, and

3.  Plaintiff's remaining claims are dischargeable in bankruptcy as arising purely from a breach of contract.

### JUDGMENT AND ORDER

Plaintiff, Virgil Ray and Inez Neely, represented by Stephen Livshee, alleged that the defendant, Wesley B. Edmond, represented by Archibald Hill, was indebted to them by virtue of defendant's failure to pay certain mechanic's and materialman's liens

out of trust funds received by him under a construction contract with Plaintiffs. Plaintiffs also sought damages for the debtor's failure to complete the construction contract. Plaintiffs further alleged that the debtor's indebtedness is nondischargeable in bankruptcy as being a debt for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).

The case came on for trial after required notice and after a full evidentiary hearing the matter was taken under advisement. Pursuant to the written Opinion filed herewith and made a part hereof by reference,

IT IS ORDERED AND ADJUDGED:

1. That Plaintiff is hereby granted judgment in the amount of $7,776.71,

2. Said judgment amount represents a debt for defalcation while acting in a fiduciary capacity and, as such, is nondischargeable in bankruptcy, and

3. Plaintiff's remaining claims are dischargeable in bankruptcy as arising from a breach of contract.