**In re Alexander S. PIRNIE, Bankrupt.**

**Lawrence A. HARRIS and Theresa C. Harris, Plaintiffs,**

**v.**

**Alexander S. PIRNIE, Defendant.**

**Bankruptcy No. 79–1639–L.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 10, 1981.

Charles W. Bohmfalk, Cambridge, Mass., for plaintiffs.

Robert E. Factor, Silverman, Factor & Godino, Burlington, Mass., for defendant.

## MEMORANDUM ON THE DISCHARGE-ABILITY OF A DEBT

THOMAS W. LAWLESS, Bankruptcy Judge.

On August 31, 1979, Alexander S. Pirnie (hereinafter referred to as the "Defendant") filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. A first meeting of creditors was held on October 3, 1979 and a trustee was duly elected.

A complaint to obtain a determination of the dischargeability of a debt under § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2) (hereinafter referred to as "§ 17(a)(2)") was filed by Lawrence A. Harris and Theresa C. Harris (hereinafter referred to as the "Plaintiffs") on November 2, 1979. Essentially, the complaint alleges that, in early June of 1978, the Plaintiffs entered into a purchase and sale agreement with the Defendant/bankrupt, as trustee of Schenley Development Trust, to purchase

certain real estate. In accordance with this agreement, the Plaintiffs tendered as a deposit, one thousand ($1,000.00) dollars on May 30, 1978, and an additional three thousand ($3,000.00) dollars on June 6, 1978, to an agent of the Defendant. Subsequently, the real estate that was the subject matter of the proposed sale was foreclosed on by the Hillside Cambridge Co-operative Bank. The gravamen of the Plaintiffs' complaint is that, at the time of entering into the agreement, Defendant, knew or should have known that the property would be foreclosed, and that consequently he would be unable to convey marketable title and would be in breach of the agreement. Nevertheless, Plaintiffs argue, Defendant entered into the contract and then accepted and misappropriated the deposit monies. Plaintiffs maintain, therefore, that Defendant perpetrated a fraud upon them that is cognizable under § 17(a)(2),[1] and they seek to have their resulting claim against Defendant, for four thousand dollars, declared nondischargeable.

Plaintiffs further allege that the language of the agreement imposes an obligation on the Defendant to hold the deposit funds in an escrow account.

Defendant/bankrupt, in his answer, denies that he committed any fraud upon the Plaintiffs. Defendant maintains that, at the time he entered into the purchase and sale agreement, he did not know that the property would later be foreclosed. He further denies the existence of an escrow holding between himself and the Plaintiffs.

On April 28, 1981, a hearing was held on the Plaintiffs' complaint and a stenographic record was transcribed. Upon consideration of the testimony elicited at this hearing and the exhibits received in evidence, I determine the facts to be as follows:

On June 3, 1978, Plaintiffs, as buyer, entered into a purchase and sale agreement with Schenley Development Trust, as seller, to purchase real property located in Billerica, Massachusetts. An addendum, incorporated into the agreement, provides that the seller will construct a dwelling on the premises and develop the surrounding land. The agreement also states that the Hillside Cambridge Co-operative Bank is the construction loan mortgagee. The Defendant/bankrupt signed this agreement and the word "Trustee" appears typewritten directly after his signature (exhibit A). The agreement provides for a deposit of one thousand dollars "To Be Held by Seller"[2] (exhibit A). It further provides that "Buyers agree to make an additional deposit, with the seller, of $3,090.00" (exhibit A). The Plaintiffs, in accordance with these terms, delivered two checks totalling four thousand dollars to Delta Realty Company (transcript at 6–8). Delta Realty Company subsequently deposited one of the checks, in the amount of one thousand dollars, into a Delta Realty operational account (transcript at 18). Delta Realty endorsed over the second check of three thousand dollars to Schenley Development Trust (transcript at 8, 18). The second check was then deposited in the Schenley Development Trust operational account (transcript at 20). These funds were used to pay the general operational expenses of the trust (transcript at 20). The seller failed to perform its obligations under the contract and did not return the deposit funds to the plaintiffs. The Defendant was the controlling force behind the trust and Delta Realty Company. (transcript at 16–17)

At the conclusion of the hearing, three issues requiring resolution remained.

The first issue is to what extent, under § 17(a)(2), can the debts of a trust be nondischargeable as to the trustee of the trust, when the trustee and not the trust is the bankrupt and the trustee is the moving force behind the trust.

---

1. § 17(a) of the Bankruptcy Act states in relevant part, "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as... (2) are liabilities for obtaining money or property by false pretenses or false representations...."

2. The word "Broker" is crossed out and the word "Seller" is inserted after it.

The second issue is whether the debt resulted from the Defendant's fraud, so that it is nondischargeable under § 17(a)(2).

The third issue is whether the evidence presented warrants a finding that an escrow holding exists between the parties to the agreement.

Massachusetts law controls on the issue of whether the Defendant has effectively excluded his personal liability on the contract.

Defendant maintains, that under M.G.L. ch. 203, § 14A,[3] he is not personally liable on the purchase and sale agreement because he revealed his representative capacity and identified the trust estate in the contract. He concludes, therefore, that no debt exists between himself and the Plaintiffs that could be declared nondischargeable under § 17(a)(2). Defendant essentially argues that the court cannot consider the issue of whether he fraudulently caused the Plaintiffs to enter into a contract, because he is not personally liable on that contract.

This argument is not persuasive because, although the first paragraph of § 14A *supra* enables a trustee to limit his personal liability for breach of contract, it does not shield him from liability for his own fraud. Under Massachusetts law, a complaint seeking damages for fraud or deceit is considered to be an action in tort. See *Pedrich v. Porter*, 87 Mass. 324, 5 Allen 324 (1862); *McComb v. C. R. Brewer Lumber Co.*, 184 Mass. 276, 68 N.E. 222 (1906); *Des Brisay v. Foss*, 264 Mass. 102, 162 N.E. 4 (1928); *Kabatchnick v. Hanover-Elm Bldg. Corp.*, 328 Mass. 341, 103 N.E.2d 692 (1952). Thus, if Plaintiffs could bring an action based upon fraud, to recover damages from the Defendant, in a Massachu-

setts state court, their suit would be regarded as an action in tort. The second paragraph of § 14A expressly provides that "[a] trustee shall be personally liable ... for torts committed in the course of administration of the trust estate only ·if he was personally at fault." Consequently, a Massachusetts forum would apply the second paragraph of § 14A in this case and Defendant's exclusion of his personal liability for breach of contract pursuant to the first paragraph, would be irrelevant. Furthermore, in Massachusetts, a party cannot contract against liability for his own fraud. *Butler v. Prussian*, 252 Mass. 265, 147 N.E. 892 (1925); *Noack v. Standard Stores, Inc.*, 281 Mass. 53, 183 N.E. 54 (1932); *Granlund v. Saraf*, 263 Mass. 76, 160 N.E. 408 (1928).

> Fraud which enters into the making of the contract cannot be excluded from the reach of the law by any form of phrase inserted in the contract itself. Parties cannot by written words prevent the law from inquiring into and granting relief for fraud in the substance of the contract.

*Id.*, at 263 Mass. 79, 160 N.E. 409. "[C]ontracts or clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown." *Bates v. Southgate*, 308 Mass. 170, 182, 31 N.E.2d 551, 558 (1941). The First Circuit Court of Appeals, in *Schell v. Ford Motor Company*, 270 F.2d 384 (1st Cir. 1959), intimated that an exculpatory provision in a contract is unenforceable if that provision was obtained by fraud. *Id.* at 387. In the instant case, the Plaintiffs allege that the entire contract was obtained by· fraud. Section 14A, therefore, does not prevent this court from inquiring into the

---

**3.** M.G.L. ch. 203, § 14A provides in relevant part:

> Unless otherwise provided in the contract, a trustee shall not be personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the trust estate unless he failed to reveal his representative capacity and identify the trust estate in the contract...
>
> A trustee shall be personally liable for obligations arising from ownership or control of property of the trust estate or for torts com-

mitted in the course of administration of the trust estate only if he was personally at fault.

Claims based on contracts entered into by a trustee in his individual capacity on obligations arising from ownership or control of the trust estate, or on torts committed in the course of trust administration may be asserted against the trust estate by proceeding against the trustee in his fiduciary capacity, whether or not the trustee was personally liable therefor.

issue of the debt's dischargeability under § 17(a)(2).

The standard for finding a debt nondischargeable, under § 17(a)(2), is set forth in *Commonwealth of Massachusetts v. Hale*, 618 F.2d 143 (1st Cir. 1980). The court determined, that for a debt to be nondischargeable because it was incurred as a result of false pretenses or false representations:

"[i]t must ... affirmatively appear that [the] representations were knowingly and fraudulently made, and that they were relied upon by the other party.' 1A Collier on Bankruptcy ¶ 17.16 at 1635–36. In addition, a fraudulent intent to deceive is generally required. *In re Houtman*, 568 F.2d 651, 655 (9th Cir. 1978) (debtor, among other things, must have made the representations at the time knowing they were false, with the intention and purpose of deceiving the creditor).

*Id.*, at 147.

The Plaintiffs have the burden of proving that this standard has been satisfied. *In re Nance*, 556 F.2d 602 (1st Cir. 1977).

The Plaintiffs, in an attempt to meet this burden, have proven the following facts: they entered into a contract with the Defendant/trustee and Schenley Development Trust; pursuant to this contract they transferred four thousand dollars to the trust; the Defendant and the trust breached the contract; the four thousand dollars was used to pay the general operational expenses of the trust; and the Defendant was the controlling force behind the trust.

■ It is of no consequence that the Defendant obtained the deposit funds for the benefit of the trust and not for his own benefit. Section 17(a)(2) applies even when a bankrupt fraudulently obtains property for a party other than himself. *In re Kunkle*, 40 F.2d 563 (6th Cir. 1930); *In re Aldridge*, 168 F.2d 93 (2nd Cir. 1909); *In re Scheffler*, 1 F.Supp. 582 (W.D.N.Y.1932);

*In re Tising*, 1 B.C.D. 1300 (Bkrtcy., E.D. Wis.1975).

■ After a review of all the facts, I am convinced that the Plaintiffs have not met their burden of proving that the Defendant knowingly and fraudulently made representations that could be characterized as affirmative fraud. *Hale, supra,* at 147. The purchase and sale agreement indicates that the Hillside Cambridge Co-operative Bank was the construction loan mortgagee. However, this alone is not sufficient to establish the inference that the Defendant knew that the property would be foreclosed at the time he signed the agreement. No other evidence has been presented that would support a finding that the Defendant intended to deceive the plaintiffs. Consequently, Plaintiffs have not established that an intent to defraud existed at the time the agreement was executed. *In re Lawrence*, 10 B.R. 853 (Bkrtcy., E.D.Va.1981).

In addition, the purchase and sale agreement does not require that the deposit funds be used to pay the bills and construction costs of a particular piece of property. Thus, Defendant's use of those funds, to pay the general operational expenses of the trust, does not evidence a scheme to defraud the Plaintiffs.

■ The Plaintiffs further maintain that they entered into an escrow agreement with the Defendant. Plaintiffs' failure to transfer the deposit funds to a disinterested third party is not fatal to this argument. *See Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257 (1st Cir. 1963). However, there is nothing in the record to support Plaintiffs' contention that an escrow was established. Defendant, therefore, did not hold the deposit funds in escrow.

■ There is some authority for finding the debts of a construction contractor to be nondischargeable under § 17(a)(4) of the Bankruptcy Act, 11 U.S.C. § 35(a)(4)[4] on

---

4. § 17(a) of the Bankruptcy Act provides in part,

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except

such as ... (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity;"

the ground that the contractor holds in a statutory trust, funds advanced to him to pay the costs of construction. *In re Grosso,* 9 B.R. 815 (Bkrtcy., N.D.N.Y.1981); *In re Edmond,* 5 B.R. 172 (Bkrtcy., W.D.Okl. 1980). However, such a fiduciary duty will be imposed upon the contractor only if it is created by state law. In addition, the trust relationship must arise prior to the act creating the debt and without reference to that act. *Matter of Angelle,* 610 F.2d 1335 (5th Cir. 1980); *See Upshur v. Briscoe,* 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1890).

■ The only Massachusetts statute bearing on this issue is M.G.L. ch. 266, § 38A [5] which makes misappropriation of the proceeds of a construction loan a criminal offense. Assuming that this statute creates a trust, the trust would not arise until the misappropriation, subsequent to the act creating the debt. Thus, the trust would not exist prior to the wrong and without reference to it. *Matter of Angelle* supra. Also, the funds that were allegedly misappropriated were the deposit monies of the Plaintiffs and not the proceeds of a construction loan. Consequently, § 38A *supra* is inapplicable and does not impose a fiduciary duty upon the Defendant for the purposes of § 17(a)(4).

Accordingly, the debt is dischargeable in bankruptcy.

---

5. M.G.L. ch. 266, § 38A provides:

Whoever obtains a building or construction loan, secured by a mortgage of real estate, for the payment for labor furnished or to be furnished and/or materials used and/or employed or to be used and/or employed in the construction, repair, removal or alteration of a building or other structure which is attached or is to be attached to such real estate, and before payment in full for all labor furnished or to be furnished and/or materials used or to be used and/or employed or to be employed as aforesaid, applies the proceeds of such loan, or any part thereof, to any use other than payment for labor and/or materials as aforesaid, shall be punished by a fine of not more than five hundred dollars or by imprisonment in jail for not more than one year, or both.